North Bennington School District v. Mount Anthony Union High School District No. 14, No. 234-7-04 Bncv  (Carroll, J., Mar. 15, 2005)


[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]


| STATE OF VERMONT | BENNINGTON SUPERIOR COURT |
|---|---|
| BENNINGTON COUNTY, SS. | DOCKET NO. 234-7-04Bncv |

**NORTH BENNINGTON SCHOOL**
**DISTRICT and POWNAL SCHOOL**
**DISTRICT,**
       **Plaintiffs**

              **V.**

**MOUNT ANTHONY UNION HIGH**
**SCHOOL DISTRICT NO. 14, BENNINGTON**
**SCHOOL DISTRICT, INC., SHAFTSBURY**
**SCHOOL DISTRICT and WOODFORD**
**SCHOOL DISTRICT,**
       **Defendants**

## ORDER ON DEFENDANTS' MOTION
## TO DISMISS

Defendant Mount Anthony Union High School District No. 14 seeks dismissal of the

complaint filed by the North Bennington and Pownal School Districts, arguing that the suit is

barred by the doctrine of sovereign immunity; that it is out of time pursuant to 16 V.S.A. §552;

that Plaintiffs should seek relief under 16 V.S.A. §212; and that the complaint fails to state a

claim upon which relief may be granted.

## I.  Background

Plaintiffs are public elementary school districts.  Defendant Mount Anthony Union High

School District No. 14 (MAU district) is a public secondary union school district and the

remaining defendants are all public elementary school districts. All of the elementary school districts, both Plaintiffs and Defendants, are members of the MAU district. The MAU district operates the Mount Anthony Senior High School and the Mount Anthony Middle School, which formerly included seventh and eighth grades. The MAU district is governed by a board of directors, elected at large from the member school districts, which determines the assessments for each of the member towns pursuant to an agreement (the MAU agreement) entered into between the MAU district and the various members.

In 1997, the MAU district sought approval from its members for the purchase of 124 acres of land on East Road in Bennington in order to construct a new middle school. In May 1997, the voters in the various districts approved the purchase and the MAU district closed on the land in March 1998. During this time period, Bennington School District (BSD) was investigating the construction of a new building to house its sixth grade, due to overcrowding. MAU and BSD began to collaborate on the idea of constructing a sixth grade wing at the proposed new middle school for BSD students. MAU and BSD invited the other member districts to consider sending their sixth grade students to the new 6th grade wing. All other districts declined the invitation (including the other named Defendants).

However, in order to educate the 6th grade students, MAU was required to propose an amendment to the MAU agreement which would permit it. Concurrently, BSD also sought amendment to the BSD agreement that would permit BSD to send its 6th grade students to the MAU Middle School. Both amendments were proposed in January 1998 and put before the voters at the March 2nd and 3rd (1998) annual meetings. The MAU amendment was approved as follows:

(g) All expenses of the Union Junior High School of the Union District attributable to the operation of the 7th and 8th Grades, as computed in accordance with (d) above, shall be divided among the member districts in the proportion which 7th and 8th grade enrollment in each member district bears to the total number of 7th and 8th grade students enrolled in said forty-day period from all the districts that are members of the Union School District. All expenses of the Union Junior High School of the Union School District attributable to operation of the 6th Grade, as computed in accordance with (d) above shall be divided among the member districts in the proportion which 6th Grade enrollment in each member district for the first forty days of the school year during the fiscal year bears to the total number of the 6th Grade students enrolled in said forty-day period from all the districts that are members of the Union School District. (Amended to provide for 40 day count and 6th Grade on March 3, 1998).

The BSD agreement was amended to read:

Section 4 New district to maintain public schools for grades kindergarten through sixth.

After July 1, in such year, Bennington School District, Inc., shall provide for the elementary education of pupils within the territorial limits of the district for grades kindergarten through sixth.

Plaintiffs' complaint alleges that, at the BSD annual meeting, BSD officers represented to the voters that BSD would be solely responsible for the costs MAU incurred to construct the new 6th grade wing, that BSD would contribute the proceeds from the sale of the Cora B. Whitney School toward the new wing, and that BSD would contribute its share of the interest accruing on the loan acquired by MAU to purchase the land. (See Plaintiffs' Complaint at p. 6, ¶43 (a-c)).

MAU and BSD continued planning the new wing construction and held a public meeting in September 1999 during which, Plaintiffs allege, MAU and BSD officials represented that BSD would be solely responsible for the costs of construction of the 6th grade wing. (See Plaintiffs' Complaint at p. 7, ¶49). MAU later sought approval of a bond measure to fund the construction. At a meeting in November 1999, MAU allegedly represented that BSD would be solely responsible for the costs of construction. (See Plaintiffs' Complaint at p. 8, ¶52). The bond

3

measure was approved. A re-vote in January 2000 later defeated the bond measure; however, it was again approved at another vote. Another re-vote occurred in August 2000, with the bond measure again obtaining approval. Throughout all meetings relating to these votes, Plaintiffs allege that MAU and BSD officials represented to the voters that BSD would be solely responsible for the costs of construction of the 6th grade wing and that the remaining school districts would have no financial responsibility in the venture. (See Plaintiffs' Complaint at p. 9, ¶¶66, 67).

MAU began construction of the new middle school and 6th grade wing during the winter of 2002-2003.[1] During fiscal year 2002-2003, MAU assessed BSD $118,966 which represented the total costs associated with construction of the 6th grade wing. The assessments to the other districts did not include construction costs. MAU later revoked the assessment to BSD, in October 2002, deciding that all districts should share in the costs of construction for the 6th grade wing. BSD was reassessed at $71,926 and the other member districts were assessed additional amounts to make up the difference between BSD's first and second assessments. The 2003-2004 fiscal year budget for MAU assesses each member district a portion of costs for the wing construction. BSD 6th grade students have never occupied the new space.

## II. Causes of Action

Plaintiffs seek relief from the Court in the form of a declaratory judgment (Count A) that MAU has improperly assessed its member districts for the construction of the new 6th grade wing

---

[1]Construction was delayed by a lawsuit challenging the validity of the MAU agreement amendment. The case reached the Vermont Supreme Court which affirmed the trial court's dismissal of the action because it was out of time. See Bethel v. Mt. Anthony Union High School District, 173 Vt. 633 (2002).

based upon its erroneous interpretation of the amended MAU agreement. Further counts include: Wrongful Assessment (Count B); Promissory Estoppel (Count C); Negligent Misrepresentation by both MAU and BSD (Counts D and E); Breach of Fiduciary Duty by both MAU and BSD (Counts E (sic) and F); and Negligence by both MAU and BSD (Counts G and H).

## III. Legal Analysis

### a. Immunity

Defendant MAU seeks dismissal of Counts B, C, D, E, and G of the complaint, first arguing that the doctrine of sovereign immunity prevents MAU from being sued under the circumstances presented by Plaintiffs.

A motion to dismiss for failure to state a claim under VRCP 12(b)(6) may only be granted if it is beyond doubt that there exist no facts or circumstances that would entitle plaintiff to the relief s/he seeks. Richards v. Town of Norwich, 169 Vt. 44, 48-49 (1999). Moreover, in reviewing the motion, the Court assumes that all factual allegations in the complaint are true, and accepts all reasonable inferences that may be derived therefrom. Id.

"The concept of sovereign immunity has generally embodied two principles: citizens cannot sue a state in that state's own courts without its consent; and the state is immune from torts committed by its agents." Jacobs v. State Teachers' Retirement System of Vermont, 174 Vt. 404, 408 (2002)(finding that the state teachers' retirement system is an arm of the State and, therefore, protected by sovereign immunity and that the system did not waive this immunity).[2]

---

[2]Although a sovereign may waive its immunity under this doctrine and consent to be sued by purchasing liability insurance to cover certain claims, this Court will not consider such a

5

The Vermont Supreme Court has previously held that a school district is immune from suit in a tort action based upon the doctrine of municipal immunity. Farmer v. Poultney School District, 113 Vt. 147 (1943). This decision reaffirmed adherence to the general rule that:

> (I)n the absence of statutory provision there can be no recovery against a municipal corporation for injuries occasioned by its negligence or nonfeasance in the exercise of functions essentially governmental in character, but in so far as a municipal corporation acts in its private or proprietary capacity the general rule is that it is liable in tort in the same manner as a private corporation.

Id. at 149. In determining whether an action is a governmental or propriety function, one should consider "that powers conferred upon municipalities by character or by other statutory provisions are governmental rather than corporate or propriety functions." Id. at 150. In addition:

> Many cases are to be found which hold that the statutory activities of a city, town, school district or incorporated village in the conduct, management and maintenance of schools are within the rule of immunity from tort liability in the absence of a statute expressly imposing such liability.

Id.

Based upon the above, it would appear that some of the counts brought by Plaintiffs will not stand against Defendants because of municipal immunity, specifically Counts D, E (both), F, G and H. There is no doubt that the activities in dispute in this case were governmental and not proprietary functions. Id. The Court is not convinced, however, that Counts B and C fall in this category as they do not allege torts against Defendants.[3] However, Plaintiffs argue that even if the named Defendants are immune from suit, the individual school directors who acted on behalf of Defendants may be liable and that pursuant to 24 V.S.A. §901(a), suit must be brought in the

waiver in this case. See Title 29 V.S.A. Sec. 1403. Defendant MAU has produced evidence at this juncture that it does not have liability insurance to cover the claims in this case and Plaintiffs have not contended otherwise. The issue is moot.

6

name of Defendants. This statute states:

> Where an action is given to any appointed or elected municipal officer or town school district officer, the action shall be brought in the name of the town in which the officer serves and in the case of a town school district officer in the name of the town school district. If the action is given against such officers, it shall be brought against such town or town school district, as the case may be.

Defendants argue that the individual school directors would be entitled to qualified immunity from suit because Plaintiffs have not alleged in the complaint that they acted in "bad faith" or for a malicious purpose.

While this may be an appropriate argument at the summary judgment stage, at this juncture, there appears to be a factual dispute as to whether the individual school directors acted with the bad faith or malice necessary to find them liable. Defendants have not yet answered the complaint and the Court must consider the Motion to Dismiss in light of Plaintiffs' complaint, assuming that all factual allegations are true and drawing any reasonable inferences from the allegations. Plaintiffs' complaint contains enough information for the Court to find at this time that if the school directors made fraudulent statements during the process, it was done with the intent to misinform the voters for the purposes of building the new facility and later charging all school districts for its costs. While this may not pan out in the end, the Court cannot find at this time, that there exist no facts or circumstances which would entitle Plaintiffs to the relief they seek against the individual school directors. Counts D, E (both), F, G, and H will not stand against MAU or the other municipal Defendants, but may stand against the individual school directors who alleged committed the torts. However, the Court will require Plaintiffs to amend their complaint to give sufficient notice to Defendants of the specifics under this theory of

---

[3]Count C will be dismissed later in this opinion for another reason.

7

liability and to give notice of the individuals whom Plaintiffs allege committed the torts.

### b.  Timeliness of Complaint

Defendants next argue that pursuant to 16 V.S.A. §552 this complaint was brought out of time.  In pertinent part, this statutes states that:

> This section shall be liberally construed to effect the legislative purpose to validate and make certain the legal existence of all school districts in this state and the validity of bonds issued by school districts, and to bar every right to question the existence of a school district or the validity of a bond voted by it, in any manner; and to bar every remedy therefor notwithstanding any defects or irregularities, jurisdictional or otherwise, after the expiration of the six month period.

In addition, Defendants argue that the Supreme Court previously found that this complaint is barred pursuant to the above statute when it decided Bethel v. Mt. Anthony Union High School District, 173 Vt. 633 (2002).

Defendants' argument in this regard must fail.[4]  When the Vermont Supreme Court denied relief in Bethel, it did so by finding that the plaintiff in that case was challenging the very validity of the 1998 amendment and that since this challenge, in the form of a request for declaratory judgment, was brought three years later, it was out of time pursuant to 16 V.S.A. §522.  As Plaintiffs point out, they are not challenging the existence or validity of the MAU agreement, nor the bond vote.  Rather Plaintiffs are requesting that the Court *interpret* those provisions to determine whether Plaintiffs have properly been assessed costs according to the terms of those provisions.  Plaintiffs are not attacking the validity nor formation of either and,

---

[4]Again, Count C will be addressed later in this opinion.

8

therefore, §522 is not applicable.[5]

### c. Promissory Estoppel

In Count C of the complaint, citing promissory estoppel, Plaintiffs allege that "MAU, BSD and/or their respective officers, directors and/or administrators made said representations for the purpose of inducing Plaintiffs and the voters in Plaintiffs' district to support and/or vote in favor of the aforesaid MAU bond measure." (See Complaint, p. 13, ¶102). The complaint further states that "Plaintiffs and the voters in Plaintiffs' district relied upon said representations by MAU, BSD and/or their respective officers, directors and/or administrators, and cast votes in favor of said MAU bond measure, believing that Plaintiffs and their respective taxpayers would not be legally liable for the expenses MAU incurred constructing said BSD 6[th] grade wing." (See Complaint, p. 13, ¶103).

In this Count, Plaintiffs are essentially arguing that the votes at issue were not made with knowledge on the part of the taxpayers because the votes were made based upon misrepresentations by the school officers. In this regard, Plaintiffs are really challenging the validity of the vote based upon the alleged misrepresentations no matter how they describe their claim. Therefore, 16 V.S.A. §522 would apply to this claim and does prohibit Plaintiffs from bringing this claim past the six month time period. Since it was not brought during the requisite time period, it shall be dismissed.

---

[5]While this decision may appear to be in conflict with the decision to allow the fraudulent misrepresentation claims to go forward as discussed in Section III(a), the remedy sought in that regard would not be a declaration that the amendment or bond themselves are invalid. Rather, damages against the school directors themselves would be at issue.

In addition, Plaintiffs do not appear to be challenging the "results of an election" as argued by Defendants. Again, Plaintiffs are asking the Court to interpret and enforce the MAU

## ORDER

1.  The Motion to Dismiss is **DENIED** with respect to all counts, except Count C. That count is hereby **DISMISSED.**

2.  Plaintiffs shall amend their complaint consistent with the decision expressed in part III(a) of this opinion to give notice of the specific facts and theory it will rely upon in alleging claims against the individual school directors.  This shall be filed within 21 days of the date of this order.  Defendants' time to file an answer is extended to 30 days after the amendment is served.

Dated:

_____
Karen R. Carroll
Presiding Judge

---

agreement.