## Michael BETHEL v. MOUNT ANTHONY UNION HIGH SCHOOL DISTRICT

[795 A.2d 1215]

No. 01-276

March 12, 2002. Appellant, Michael Bethel, sought a declaratory judgment in superior court, brought pursuant to 12 V.S.A. § 4711, to determine the validity of a 1998 amendment to an agreement which established the Mount Anthony Union High School District. Appellee, the Mount Anthony Union High School District, filed a motion to dismiss, pursuant to V.R.C.P. 12(b), premised on a claim that the appellant's complaint was time-barred. In a subsequent motion for summary judgment, appellant asked the superior court to declare the amendments invalid. The court below granted the appellee's motion to dismiss, and appellant appeals. We affirm.

In 1962, the Bennington, North Bennington, Pownal, Shaftsbury, and Woodford School Districts agreed to form the Mount Anthony Union High School District (MAU District) pursuant to 16 V.S.A. § 701. The agreement authorized the MAU District to operate schools for the students in each of the member districts, grades seven through twelve. On March 2, 1998, an amendment proposing to include grade six within the MAU District's authority was presented to the voters of each member district. The vote was conducted by Australian ballot, and each member district's votes were tallied separately. The tallies revealed that a majority of the total voters supported expansion; however, the majority of voters in the Pownal and Woodford districts opposed expansion. As a result of the tabulated votes, the MAU District announced that the amendment had been approved and then proceeded with plans to construct a new middle school designed to accommodate grades six through eight. On August 22, 2000, the MAU District obtained voter approval for a $20 million construction bond for a new middle school.

Appellant filed a petition for declaratory judgment on March 23, 2001, more than three years after the amendment certification, disputing the validity of the amendment to the union school district agreement. Appellant argued that the amendment to the union agreement was void because it was not ratified by a majority of the voters *within each* of the five respective member districts as required by 16 V.S.A. § 706n(a) if the proposed amendment concerns the method of allocating capital and operating expenses of the union. The MAU District in turn filed a Rule 12(b) motion to dismiss on March 30, 2001, claiming that the appellant's complaint was not

timely filed pursuant to 16 V.S.A. § 552, which establishes a six month statute of limitations for commencing actions that challenge the formation or existence of a union school district. In the alternative, the MAU District argued that appellant's complaint was a challenge pursuant to V.R.C.P. 75, which requires that such complaint be made thirty days after notice of any action of which review is sought, and, therefore, appellant's complaint was time-barred.

Appellant countered that Rule 75 was not applicable, or, if applicable, that the facts in this case presented a special situation where the six year limitation for general civil claims, 12 V.S.A. § 511, would apply rather than the thirty day limitation under Rule 75. Appellant did not address the District's claims under 16 V.S.A. § 552 at the trial court level. On appeal, appellant contends that the section does not apply.

The purpose of a Rule 12(b)(6) motion is " 'to test the law of a claim, not the facts which support it.' " *Levinsky v. Diamond*, 140 Vt. 595, 600, 442 A.2d 1277, 1280 (1982) (quoting *Niece v. Sears, Roebuck & Co.*, 293 F. Supp. 792, 794 (N.D. Okl. 1968), *overruled on other grounds by Muzzy v. State*, 155 Vt. 279, 583 A.2d 82 (1990). Thus, when considering a Rule 12(b)(6) motion, "[t]he Court's attention . . . is . . . directed toward determining whether the bare allegations of the complaint constitute a statement of a claim under V.R.C.P. 8(a)." *Id.* Since averments of time and place are material for testing the sufficiency of a complaint, defenses based on a failure to comply with the applicable statute of limitations are properly raised in a motion to dismiss. *Fortier v. Byrnes*, 165 Vt. 189, 193, 678 A.2d 890, 892 (1996).

A motion to dismiss for failure to state a claim upon which relief can be granted should not be granted unless it is beyond . doubt "that there exist no facts or circumstances that would entitle the plaintiff to relief." *Amiot v. Ames*, 166 Vt.

288, 291, 693 A.2d 675, 677 (1997). When reviewing the disposition of a Rule 12(b)(6) motion, this Court assumes that all well pleaded factual allegations in the complaint are true, as well as all reasonable inferences that may be derived therefrom. *Richards v. Town of Norwich*, 169 Vt. 44, 48, 726 A.2d 81, 85 (1999). Using this standard, we affirm the decision of the trial court.

The District argues that the appellant's claim is time-barred due to the six month statute of limitations for commencing actions challenging the formation of a union school district, or the legality or validity of bonds issued by any school district found in § 552 of Title 16. This Court agrees and holds that 16 V.S.A. § 552 governs the issue in the instant case. Section 552 reads:

No action shall be brought directly or indirectly attacking, questioning or in any manner contesting the legality of the *formation, or the existence* as a body corporate and politic of any union school district created pursuant to chapter 11 of this title, after six months from the date of recording in the office of the secretary of state of the certificate of the commissioner of education designating such district . . .; nor shall any action be brought directly or indirectly attacking, questioning or in any manner contesting the legality or validity of bonds, issued or unissued, voted by any school district, after six months from the date upon which voters in any such school district met pursuant to warning and voted affirmatively to issue bonds to defray the cost of school improvements. *This section shall be liberally construed to effect the legislative purpose to vali-*

*date and make certain the legal existence of all school districts in this state and the validity of bonds issued by school districts,* and to bar every right to question the existence of a school district or the validity of a bond voted by it, in any manner, and to bar every remedy therefor notwithstanding any defects or irregularities, jurisdictional or otherwise, after the expiration of the six month period. (emphasis added).

In cases of statutory construction, our obligation is to effectuate the intent of the legislature. *Brennan v. Town of Colchester,* 169 Vt. 175, 177, 730 A.2d 601, 603 (1999). We construe a statute consistent with its purpose, subject matter, effects and consequences, and the reason and spirit of the law. *In re Spring Brook Farm Found., Inc.,* 164 Vt. 282, 287, 671 A.2d 315, 318 (1995). We avoid construing statutory language in a way that produces an irrational result. *State v. Quinn,* 165 Vt. 136, 140, 675 A.2d 1336, 1338 (1996).

While § 552 does not specifically apply to subsequent *amendments* to union school district agreements, the language of the statute should be broadly read to effect a legislative desire for stability of both the existence of union school districts and the legality and validity of bonds issued by school districts. The section's language does not limit its coverage only to initial *formations* of union school districts; indeed, its language covers both the formation and the *existence* of the school district, which, liberally construed, includes amendments to an already existing body politic. We find it would be inconsistent with the express legislative purpose of § 552 to construe the section to prohibit attacks on the original formation of a union school district after the expiration of the six month time limitation but to allow for

attacks on their expansion and continued existence. Consistent with the statutory construction principles outlined above, we hold that the time limitation of six months expressed in § 552 governs amendments to union school district formation agreements, as well as the original agreements themselves.

It is apparent from other provisions in Title 16, of which § 552 is a part, that the legislature is expressly concerned with the formation of union school districts, their initial operation, and the certainty of their continued existence. See *Galkin v. Town of Chester,* 168 Vt. 82, 87, 716 A.2d 25, 29 (1998) (explaining that specific sections of statutes are read in context and entire scheme read in pari materia). For example, 16 V.S.A. § 721a(d) provides that a vote of withdrawal after a union school district has become a body politic as provided in § 706g, but less than one year after that date, shall be null and void. In *Appelget v. Baird,* 126 Vt. 503, 508, 236 A.2d 671, 674 (1967), this Court found a town's attempt to withdraw from a district within one year to be a nullity under this section[1] and recognized that "[i]t is the peculiar nature of a union school district's beginnings that there are always other towns or districts simultaneously involved, whose rights, duties and obligations are . . . at stake. With such an intertwining of interests, the unrestricted application of the general right to reconsider may create an impossibly confused situation . . . ." The limitations of § 721a(d) on the general right to reconsideration of the vote and this Court's recognition of the complex nature of a school district's formation emphasize the importance of giving effect to the legis-

---

[1] The statute in effect when *Appelget v. Baird* was decided, 16 V.S.A. § 612(a), was repealed in 1968 and replaced by 16 V.S.A. § 721a. 16 V.S.A. § 612(a) differs only slightly from 16 V.S.A. § 721a.

lative purpose outlined in § 552, of validating and making certain the legal existence of all school districts in this state.

Section 552 also expresses a legislative desire to make certain the validity and legality of bonds issued by school districts. The express legislative protection for the fiscal stability of school districts found in § 552 is also apparent in other sections of Titles 16 and 17 and in our past decisions. For example, in *Santi v. Roxbury Town School District*, 165 Vt. 476, 476, 685 A.2d 301, 301 (1996), this Court held that town voters were not entitled to a new reconsideration vote on the 1995-96 school budget under 16 V.S.A. § 711e, which sets forth the procedure for when a school district elects to have its budget determined by Australian ballot. In denying the voters' request and holding that 17 V.S.A. § 2661(c).[2] prevented further revotes without approval of the legislative body of the district, this Court recognized the necessary tension between "the democratic principles supported by allowing reconsideration and the need for finality if the district is to deliver the educational services upon which its families depend." *Id.* at 480, 685 A.2d at 304. We described a school district as a "living organism that must open and run its schools irrespective of the fiscal indecision of its electorate." *Id.* at 481, 685 A.2d at 304. This recognition of the dependence of families on school districts and the need for districts, as "living organisms," to run despite fiscal indecision, further supports our interpretation of § 552 and its application to the 1998 amendment.

It may be that the appellant could argue that the amendment to add a sixth

___

[2] 17 V.S.A. § 2661(c) provides that a question voted on shall not be presented for reconsideration or rescission at more than one subsequent meeting within the succeeding twelve months except with the approval of the legislative body.

grade to the union school agreement ultimately concerned the "method of allocating capital and operating expenses of the union," and thus would require that the amendment be adopted by each of the respective member districts by a vote of a majority of the qualified voters of the districts voting on the question, see 16 V.S.A. § 706n, but that challenge is made too late.

Appellant's attempt to undo the amendment to the district agreement, filed more than three years after its certification, and more than six months after the $20 million bond approval, is untimely under 16 V.S.A. § 552.

*Affirmed.*

Motion for reargument denied April 16, 2002.