2006 VT 71

**TOWN OF LUNENBURG, et al. v. Supervisor and Board of Governors of the UNORGANIZED TOWNS AND GORES OF ESSEX COUNTY**

[908 A.2d 424]

No. 05-165

¶ 1. July 24, 2006. Plaintiffs, several of the thirteen organized towns in Essex County, sued the Supervisor and Board of Governors of the six unorganized towns and gores of Essex County (UTGs), seeking a declaratory judgment on the disposition of a substantial sum of money in a UTG savings account. On appeal, defendants challenge the superior court's order requiring them to distribute the bulk of the funds to the organized towns of Essex County. The trial court held that defendants' view that the statutes that set up the funding mechanism for the UTGs allowed the supervisor to retain the funds indefinitely conflicted with the plain language of the statutes. Accordingly, the court ordered distribution of the funds to the thirteen organized towns of Essex County. We affirm the judgment of the trial court.

¶ 2. The six UTGs are Averill, Avery's Gore, Ferdinand, Lewis, Warner's Grant, and Warren's Gore. Largely uninhabited,

they occupy a contiguous area in Essex County of approximately 103,000 acres and were home to twenty-four registered voters and three schoolchildren in 2000.

¶ 3. The state controlled the UTGs' finances prior to January 1, 1969. In 1968, the Legislature created the position of supervisor of the UTGs and shifted control of the UTGs' finances to the supervisor. 1967, No. 331 (Adj. Sess.), §§ 1 & 3 (eff. Jan. 1, 1969). Under the new financial system created by Act 331, an annual tax was assessed "upon the grand list of all unorganized towns and gores in Essex county" at a rate of three dollars. 32 V.S.A. § 4981.[1] The supervisor was directed to meet the UTGs' expenses, including the salary of and the reasonable expenses incurred by the supervisor, from the § 4981 tax revenues. *Id.* § 4982. Finally, the Legislature required the supervisor to close the UTGs' books each year by distributing any revenue left after expenses to the organized towns of Essex County, as follows:

> During the month of July each year, upon adequate provision being made for the expenses of all unorganized towns and gores in Essex county, any surplus revenue assessed under section 4981 and received during the preceding calendar year shall be distributed by the supervisor for the unorganized

towns and gores of Essex county to each organized town and city within that county in equal amounts up to and including $300.00 for each organized town and city. Any surplus revenue then remaining shall be distributed to each organized town and city in Essex county in the proportion which the population of that town or city bears to the population of all the organized towns and cities of the county, as shown in the most recent United States census.

32 V.S.A. § 4983. Whether and how to apply this provision to the disputed savings account is the crux of this case.

¶ 4. The trial court found the following relevant facts. The savings account at issue first appeared in the UTGs' books in 1971, which reflected a $450 interest payment into the account, resulting in a total balance of $40,450. The original supervisor would later tell his successor that the account was "for emergencies." While the account witnessed some activity early on, it has been entirely dormant since 1975, at which time its balance was about $52,000. The account continued to accrue interest, however, and, as of October 25, 2000, the balance had increased to $174,021.24.

¶ 5. An audit in 2000 confirmed the existence of the savings account, and plaintiffs sued for a declaration of rights with respect to the funds in the account as of May 18, 2000, the effective date of the changes in §§ 4981-4982 and repeal of § 4983. 1999, No. 139 (Adj. Sess.), § 5. The parties filed cross-motions for summary judgment. The trial court denied defendants' motion and granted plaintiffs' motion in part. After resolving issues relating to surplus revenue for fiscal year 1999 and interest rates, the court entered judgment on April 4, 2005, ordering the UTGs to pay each of the thir-

---

[1] Unless otherwise stated, citations throughout the text to 32 V.S.A. §§ 4981-4983 are to the versions in effect before May 18, 2000. In 2000, the Legislature revamped the UTGs' financial structure, amending §§ 4981 and 4982 and repealing § 4983. 1999, No. 139 (Adj. Sess.), §§ 1-3. The act became effective on May 18, 2000, its date of passage, and applied "to grand lists for April 1, 2000 or after." *Id.* § 5.

teen organized towns its pro-rata share of the savings account principal and interest, a sum from a checking account plus interest, and prejudgment interest. Defendants appealed, principally asserting: (1) the trial court misconstrued § 4983 and failed to accord proper deference to the supervisor by treating the money in the savings account as revenue eligible for distribution to the organized towns; (2) the statute of limitations barred plaintiffs' claim to any money that was in the savings account more than six years before the suit was commenced; (3) the trial court lacked jurisdiction to award money to organized towns other than plaintiffs; and (4) the repeal of § 4983 obviated any requirement for distribution after May 18, 2000.[2] We reject each argument and affirm.

---

[2] Defendants proffered two additional claims: (1) the "unusual quantity of obvious errors" in the trial court's decision "cast significant doubt" on its conclusions; and (2) the UTGs' railroad tax revenues were not, as the trial court found, payments in lieu of taxes from the state for railroad tracks that it owned. On the first point, defendants list numerous statements in the trial court's decision that they claim are incorrect. To the extent that these points relate to the legal challenges advanced by defendants, they are subsumed by our resolution of those challenges. To the extent they do not, they are not adequately briefed legal arguments. See *Wilkins v. Lamoille County Mental Health Servs., Inc.*, 2005 VT 121, ¶ 15, 179 Vt. 107, 889 A.2d 245 (noting that points insufficiently briefed or argued do not warrant consideration on appeal). As to the railroad tax issue, assuming the trial court's discussion was incorrect, defendants fail to explain how that entitles them to relief.

¶ 6. We review summary judgment orders de novo and apply the same standard as the trial court. *Hardwick Recycling & Salvage, Inc. v. Acadia Ins. Co.*, 2004 VT 124, ¶ 14, 177 Vt. 421, 869 A.2d 82. Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. V.R.C.P. 56(c)(3). Where, as here, no genuine issues of material fact remain, "[w]e conduct a plenary, nondeferential review of the questions of law raised by the motion." *Hardwick Recycling & Salvage, Inc.*, 2004 VT 124, ¶ 14.

¶ 7. Defendants' first argument turns principally on whether the court correctly viewed the savings account as "surplus revenue" under § 4983. When interpreting a statute, our primary goal is to give effect to the Legislature's intent. *Town of Killington v. State*, 172 Vt. 182, 188, 776 A.2d 395, 400 (2001). To determine legislative intent, "we look to the words of the statute itself, the legislative history and circumstances surrounding its enactment, and the legislative policy it was designed to implement." *Perry v. Med. Practice Bd.*, 169 Vt. 399, 406, 737 A.2d 900, 905 (1999). The plain language of a statute, if unambiguous and not harmful to the legislative scheme, is sufficient evidence of legislative intent. *In re Weeks*, 167 Vt. 551, 554, 712 A.2d 907, 909 (1998).

¶ 8. The trial court concluded that the plain language of § 4983 demonstrated the Legislature's intent to create "a fiscal system in which the receipts and expenses for each year would be netted out at the close of each year, and any surplus of revenues over expenses would be paid over to the organized towns ... no later than July of the ensuing year." We agree. A fair reading of § 4983 indicates that, after making "adequate provision" for expenses, the supervisor must distribute any remaining funds to the organized towns.

¶ 9. Defendants' reading of § 4983 would undermine this purpose. See *In re Jewell,* 169 Vt. 604, 606, 737 A.2d 897, 900 (1999) (mem.) (reasoning that a statute should not be construed in way that is at odds with its underlying purpose). They read § 4983 as excluding all funds in the savings account other than the preceding calendar year's interest from the statute's definition of surplus revenue. That interpretation, however, has caused the supervisors to avoid their statutory obligation to disburse surplus funds simply by holding onto the funds in the savings account year after year. Thus, we reject defendants' interpretation because we presume the Legislature did not intend such a result. See *Will v. Mill Condo. Owners' Ass'n,* 2004 VT 22, ¶ 15, 176 Vt. 380, 848 A.2d 336 (recognizing that we presume the Legislature does not intend interpretation of statute "that would lead to absurd or irrational consequences"(quotations omitted)).

¶ 10. The "adequate provision" language of § 4983 does not permit the supervisor to maintain an ever-growing reserve fund for an indefinite duration. As the trial court observed,

> the Legislature contemplated that seven months was more than enough time for all bills for the preceding calendar year to have filtered in to the supervisor, and to have actually been paid, but if not then perhaps some estimated amount could be set aside to cover any such later arriving bills or invoices.

Just because a taxing authority may provide for future expenses does not "warrant unnecessary accumulation in the treasury for the remote future or for contingencies which may never occur." 15 E. McQuillin, The Law of Municipal Corporations § 39:2, at 5 (3d ed. 2005); see also *In re County Collector of Cook County,* 774 N.E.2d 832, 848 (Ill. App. Ct.

2002) (recognizing that a municipality "cannot unnecessarily accumulate monies in the public treasury"). This is especially true here in light of the Legislature's decision to require the supervisor to close the UTG books each year and distribute excess funds to the organized towns. The disputed funds in this case could not have been the "adequate provision" for future the statute contemplated because the supervisors never used them to pay UTG expenses and instead left them untouched in the savings account for three decades. Finally, nothing in the record suggests the amount of money in the account bears any relation to a reasonable estimate of late-arriving bills or invoices.

¶ 11. We also reject defendants' argument that we should defer to the supervisors' contemporaneous construction of § 4983 as allowing them to retain the funds in the savings account indefinitely. "[T]he contemporaneous construction of a statute by the executive officers of a government, whose duty it is to execute it, is entitled to great weight, and should not be disregarded nor overturned, except for cogent reasons, and unless it is clear that such construction is erroneous." *Re National Guard,* 71 Vt. 493, 499, 45 A. 1051, 1053 (1899). The supervisors' thirty-year practice of holding the funds in the savings account directly conflicts with the plain language and purpose of § 4983 because it precluded both the use of the disputed funds for UTG expenses and the disbursement of the funds to the organized towns — the only permissible outcomes for UTG revenue enumerated in § 4983. Instead, their construction allowed the funds to sit, untouched, in the savings account, presumably indefinitely. This is just the sort of "purely aberrational . . . result" against which this Court has warned. *Town of Killington v. Dep't of Taxes,* 2003 VT 88, ¶ 6, 176 Vt. 70, 838 A.2d 91. In addition, determining the meaning of "surplus revenue" under

§ 4983 is a legal task for which the supervisors have no special expertise. See *In re Lyon*, 2005 VT 63, ¶ 15, 178 Vt. 232, 882 A.2d 1143 (recognizing an administrative agency's discretion in making findings and conclusions of fact but declining to defer to an agency's conclusions of law in areas outside the agency's expertise). Thus, we need not defer to them in matters of statutory construction.

¶ 12. Next, this action is not, as defendants assert, time-barred, because the supervisors continuously violated § 4983 ever since the initial failure to disburse the money in the savings account to the organized towns. In concrete terms, in July 1972, the year after the savings account first appeared in the UTGs' books, each supervisor was bound by § 4983 to include that money as in the statutorily mandated reckoning of expenses against revenue and distribution to the organized towns. The passage of time did not relieve the supervisors of that duty, and the interest accumulating in the account each year became subject to distribution under § 4983 in July of the following year. Thus, at the time of this lawsuit, the supervisor was statutorily required to run the entire contents of the savings account through the § 4983 calculations and make distributions to the organized towns accordingly. Therefore, because the § 4983 violation as to all the money in the account continued right up to the time of this action, plaintiffs' claim is not time-barred. See *Howard Jarvis Taxpayers Ass'n v. City of La Habra*, 23 P.3d 601, 609 (Cal. 2001) (holding that city's continued imposition and collection of a tax without voter approval was a continuous violation, and therefore limitations period began anew with each collection and did not bar claims for declaratory and mandamus relief).

¶ 13. Next, we hold that the trial court correctly awarded the funds on a pro-rata basis to all of the organized towns in Essex County, despite the fact that some of those towns were not parties to the case. Section 4983 directs the supervisor, when a surplus exists after netting out the year's expenses, to pay "equal amounts up to and including $300.00 for *each* organized town and city," and to distribute any remaining surplus "to *each* organized town and city" in proportion to the population of each. 32 V.S.A. § 4983 (emphasis added). Thus, to award the disputed funds to any group other than *each* of the organized towns and cities in Essex County would violate the express instructions of the Legislature.

¶ 14. Finally, the supervisor was required to make a distribution in 2000 notwithstanding the fact that § 4983 was repealed that year. 1999, No. 139 (Adj. Sess.), § 3 (eff. May 18, 2000). The UTGs urge that Act 139's limitation "to grand lists for April 1, 2000 or after," *id.* § 5, does not apply to the repeal of § 4983, so that the supervisor's authority to make § 4983 disbursements ended on May 18, 2000, the effective date of Act 139. To support their contention, the UTGs cite historical notes following §§ 4981 and 4982, which each state that "the amendment to this section by section 1 of [Act 139] shall apply to grand lists for April 1, 2000 or after." 32 V.S.A. §§ 4981-4982 hist. (Cum. Supp. 2005). These historical notes, however, do not elucidate the effect of Act 139 on § 4983. Indeed, because Act 139 applies only to grand lists for April 1, 2000, or after, the provisions of § 4983 remained operative for grand lists before April 1, 2000, and the supervisor still had to conduct the § 4983 calculations for the 1999 calendar year.

*Affirmed.*