927 A.2d 782 (2007)
2007 VT 53
Sheila BRAUN
v.
Marc GREENBLATT.
No. 2005-318.
Supreme Court of Vermont.
June 15, 2007.
*784 Ben W. Joseph, J.
Brian K. Valentine and Caryn E. Waxman of Downs Rachlin Martin PLLC, Burlington, for Plaintiff-Appellee.
Susan M. Murray and Erin Miller Heins of Langrock Sperry & Wool, LLP, Burlington, for Defendant-Appellant.
Present: REIBER, C.J., DOOLEY, JOHNSON and SKOGLUND, JJ., and DAVENPORT, SUPR. J., Specially Assigned.
DAVENPORT, Supr. J., Specially Assigned.
¶ 1. Husband appeals from a family court post-judgment modification order that tripled his monthly spousal maintenance obligation and extended its duration indefinitely. Husband argues that the court committed numerous reversible errors, including failing to find a real, substantial, and unanticipated change of circumstances and ordering an amount and duration of maintenance that constitute an abuse of discretion. We reverse and remand.[*]
¶ 2. The parties married in December 1995 when both were thirty-four years old. Earlier that year, wife quit a graduate school program and left a job where she was earning $41,000 per year as a computer programmer in Washington, D.C. in *785 order to move to Vermont where her husband had been offered a position as a research physician at Fletcher Allen Medical Center and the University of Vermont. Within a year of their wedding, the parties had their first child. While husband continued to advance his career in oncology, wife assumed the role of primary caregiver and did not work outside the home. A second child was born in August 1999, by which time the parties had separated. After wife filed for divorce in September 1999, the parties negotiated a settlement agreement that provided for wife to continue as the children's primary caregiver. The agreement contemplated the possibility that wife would home school the children and earn minimal or no income.
¶ 3. At the time the stipulation was finalized and the divorce granted in December 2000, husband was earning an annual salary of $121,574.96 and wife had no earnings. Under the terms of the agreement, wife was to receive spousal maintenance, child support, and maintenance supplement. Although the marital home was awarded to husband, the parties agreed that wife could remain in the marital home after the divorce for up to thirteen months. While she remained in the marital home, she was to receive $2,650 per month in spousal maintenance. Once she moved out of the home, an event that was to occur no later than March 31, 2002, the obligation decreased to $2,350 per month.
¶ 4. The current dispute over maintenance focuses on a troublesome provision regarding the renegotiation of the maintenance obligation after divorce:
The parties will renegotiate commencing May 1, 2004 what, if anything, shall be paid in spousal support after August 31, 2004. It is the parties' intention that there be no presumption either in favor of or in opposition to the continuation of rehabilitative spousal support based on this Stipulation. The parties specifically intend to defer this issue to 2004 and take a fresh look at it at that time, when they will have better information regarding their income and expenses at that time. If the parties cannot reach agreement on this without assistance, they shall mediate this issue in good faith for not less than 5 sessions before requesting the assistance of the court.
The parties failed to reach any agreement as to what amount, if any, husband should pay in spousal maintenance after August 2004. In December 2004, after negotiation and mediation had failed, husband moved to terminate the obligation. Wife filed a cross-motion to continue maintenance at a level to be determined by the court and to enforce other provisions of the final order. The family court heard two days of testimony in January and March 2005. In addition to testimony by the parties, wife presented two expert witnesses: an accountant to analyze husband's income from 2000 to 2004, calculate arrears, and assess tax implications; and a career advisor to explain wife's career and education options for reentering the workforce. At the end of the hearings, the court invited the parties to submit proposed findings of fact and conclusions of law.
¶ 5. The family court's July 2005 decision adopted in large measure the proposed findings, conclusions, and order submitted by wife. The court modified maintenance by increasing the monthly obligation to $6,300 per month plus "an amount to cover [wife's] monthly tax obligation" for a five-year period retroactive to September 1, 2004. After the five years, husband's obligation was to decrease dollar for dollar based on wife's actual income. The order also provided that, for so long as maintenance continued, husband's obligation would increase based on either the percentage increase in his income, including *786 investment income, or an annual cost-of-living adjustment. The court further ordered that husband pay accumulated arrears owing from an income-increase provision in the final order, pay arrearages in the children's extracurricular and educational expenses, make deposits into one of the children's savings accounts, and pay the fees of wife's attorneys and expert witnesses. Husband argues that the court erred first by failing to find a real, substantial, and unanticipated change of circumstances that would support an exercise of subject matter jurisdiction and then by making a series of errors in modifying maintenance and enforcing the final order. We first address the maintenance award and then the issues related to the calculation of the spousal maintenance arrearage, the enforcement of the provision related to the children's savings accounts and the award of attorney fees.

I. Spousal Maintenance Award
¶ 6. Spousal maintenance may be modified only "upon a showing of a real, substantial, and unanticipated change of circumstances." 15 V.S.A. § 758. In the absence of the required change, the court is without jurisdiction to modify a maintenance order. Golden v. Cooper-Ellis, 2007 VT 15, ¶ 57, ___ Vt. ___, 924 A.2d 19; Taylor v. Taylor, 175 Vt. 32, 36, 819 A.2d 684, 688 (2002). There are no fixed standards for determining what meets this threshold, and the determination of whether a particular change is substantial must be made in the context of the surrounding circumstances. Golden, 2007 VT 15, ¶ 57, 924 A.2d 19 (citing Taylor, 175 Vt. at 36, 819 A.2d at 688). The trial court's ruling is discretionary and will not be disturbed "unless the discretion was erroneously exercised, or was exercised upon unfounded considerations or to an extent clearly unreasonable in light of the evidence." Taylor, 175 Vt. at 36, 819 A.2d at 688.
¶ 7. Wife argues that husband waived any jurisdictional argument by failing to raise it below. Husband's motion requested "enforcement" of the final order, rather than modification, and wife's cross-motion sought an order "establishing spousal maintenance"; the change-of-circumstances requirement was consequently unaddressed. The failure to raise the issue of subject matter jurisdiction below does not preclude its consideration on appeal, however. "It is axiomatic that lack of subject matter jurisdiction . . . may be raised for the first time on appeal. . . ." Town of Charlotte v. Richmond, 158 Vt. 354, 358, 609 A.2d 638, 640 (1992). We may thus properly consider whether the court had subject matter jurisdiction.
¶ 8. The trial court made substantial modifications to the nature and the amount of the spousal maintenance obligation that had been in place since the final order. Not only did the court order husband to pay more than triple the amount he was required to pay under the stipulated final order, but it effectively converted a rehabilitative award into a permanent award. At the time of the divorce in 2000, the parties agreed that the purpose of alimony was rehabilitative. The purpose of rehabilitative maintenance is to allow the recipient spouse to become self-supporting. Strauss v. Strauss, 160 Vt. 335, 339, 628 A.2d 552, 554 (1993). Rehabilitative maintenance is, by its nature, time limited. Id. By requiring husband to continue to pay spousal maintenance until wife's earnings exceeded the amount of the obligation, the trial court extended alimony for an indefinite period, effectively transforming it into a permanent award and eliminating any incentive for wife to become self-supporting.
¶ 9. The trial court made these changes without any reference to changed circumstances. *787 The court concluded that it had subject matter jurisdiction based on the maintenance-renegotiation provision of the final order and the family court's exclusive jurisdiction to hear and dispose of all enforcement-of-support proceedings in divorce cases. See 4 V.S.A. § 454(3), (4). It interpreted the renegotiation provision as an agreement by the parties to defer the court's determination of spousal support. In short, the court did not address the issue of changed circumstances because it concluded that the parties had stipulated the issue away.
¶ 10. "[S]ubject matter jurisdiction cannot be conferred by agreement or consent of the parties when it is not given by law." Columb v. Columb, 161 Vt. 103, 110, 633 A.2d 689, 693 (1993) (quotations omitted) (rejecting argument that party waived subject matter jurisdiction in child custody case). Just as parties may not waive the ability to seek modification if there is a change of circumstances, Taylor, 175 Vt. at 39, 819 A.2d at 690 (citing 15 V.S.A. § 758), they may not waive the jurisdictional prerequisite that there be a change in circumstances prior to a modification of maintenance. Modification of the purpose of the alimony award and the amount of the obligation cannot be made absent a finding of a real, substantial, and unanticipated change in circumstances. Failure to address this jurisdictional threshold was error.
¶ 11. Wife contends that, even if jurisdiction is properly considered on appeal, the findings by the court are sufficient to support a conclusion of changed circumstances. A determination of whether a substantial change of circumstances exists is a matter for the trial court's discretion, and our review of that determination is deferential. Meyer v. Meyer, 173 Vt. 195, 197, 789 A.2d 921, 923 (2001). Further, "[t]here are no fixed standards for determining what meets this threshold, and evaluation of whether or not any given change is substantial must be determined in the context of the surrounding circumstances." Taylor, 175 Vt. at 36, 819 A.2d at 688 (quotations and ellipses omitted). Therefore, absent an initial determination by the trial court, we decline to make a finding of changed circumstances on appeal. Pill v. Pill, 154 Vt. 455, 460, 578 A.2d 642, 645 (1990).
¶ 12. Though the failure to address the jurisdictional threshold of changed circumstances is sufficient to warrant a remand on the issue of the spousal maintenance obligation after August 2004, we consider three issues related to the maintenance award that are likely to recur on remand. See Agency of Natural Res. v. Godnick, 162 Vt. 588, 596, 652 A.2d 988, 993 (1994) (considering issues not necessary to reach holding but likely to recur on remand).
¶ 13. Critical to the trial court's rationale for both the amount and duration of the new obligation was its conclusion that wife was entitled to compensatory alimony. Compensatory maintenance
reflects the reality that when one spouse stays home and raises the children, not only does that spouse lose future earning capacity by not being employed or by being underemployed subject to the needs of the family, but that spouse increases the future earning capacity of the working spouse, who, while enjoying family life, is free to devote productive time to career enhancement.
Delozier v. Delozier, 161 Vt. 377, 382, 640 A.2d 55, 57-58 (1994). In determining the compensatory component of a maintenance award, the length of the marriage is a critical factor because it is "often a major factor creating the disparity in the parties' earning capacities" and because it provides a "benchmark for determining reasonable *788 needs." Id. (citing Klein v. Klein, 150 Vt. 466, 477, 555 A.2d 382, 389 (1988)).
¶ 14. The marriage in this case was a short-term marriage lasting only four and a half years. The trial court concluded, however, that wife would be out of the job market for a period of time comparable to a ten-year marriage because of the parties' agreement that she would raise the children and even home school them after the divorce. Meanwhile, husband's earning capacity continued to increase while his contribution to raising the children was negligible. Based on these facts, the court concluded that wife was entitled to compensatory alimony. The error in this analysis is that it focuses on the post-divorce period rather than the contributions of each spouse during the marriage. The purpose of compensatory alimony is to compensate the recipient spouse for contributions made during the marriage, not after. It is precisely for this reason that the duration of the marriage is such a critical factor.
¶ 15. A second issue is the inclusion of wife's monthly tax obligation as part of the maintenance award. In Delozier we indicated that we do not favor the use of formulas for determining maintenance awards and that such awards are susceptible to reversal unless they are "sensitive to the statutory criteria, including both parties' needs." 161 Vt. at 385, 640 A.2d at 59. We recognize that the formula used in this case is different from the formula we considered in Delozier, which related to fixed-percentage maintenance awards. Nonetheless, we find the present formula  a specific dollar amount plus tax consequences  similarly problematic. The amount is tied only to the recipient's needs and not in any way to the needs of the payor. Husband must pay wife's obligation whatever it is and to whatever degree it fluctuates, regardless of his needs. While the court must consider the expenses of both spouses including their current tax obligations and estimates of their future tax obligations in setting the amount of the maintenance award, 15 V.S.A. § 752(b)(1), (6), it cannot simply shift an expense from one party to another regardless of future fluctuations and call it spousal maintenance.
¶ 16. Finally, the conflicting escalation clauses in the modification order render future adjustments unworkable. While the trial court must consider inflation with relation to the cost of living when fashioning a maintenance order, Bell v. Bell, 162 Vt. 192, 200, 643 A.2d 846, 851 (1994), the order must clearly articulate the formula for doing so.

II. Spousal Maintenance Arrearage
¶ 17. Paragraph fifteen of the final order provided that from January 2001 until wife moved out of the marital home husband would pay $2,650 per month in spousal maintenance. The payments were to be made in three separate transactions: $700 directly to wife; $1,356.56 into an account held by wife and used to pay the mortgage; and the remainder to cover property taxes and insurance. The $700 amount was to be adjusted upwards by ten percent whenever husband's income increased by ten percent. Paragraph sixteen of the final order provided that husband would pay $2,350 per month in support to wife following wife's move from the marital home. In paragraph sixteen no similar allocation of the payments was made, presumably because wife would not be in the marital home and therefore would have discretion to spend as much or as little on her housing as she chose. Paragraph sixteen also contained no provision for upward adjustment.
¶ 18. The family court found that husband had failed to adjust his maintenance *789 payments despite his income increasing by more than ten percent. However, rather than calculating arrears based on only the $700 payment and only for the period when paragraph fifteen was in effect, the court interpreted the ten-percent-adjustment provision in paragraph fifteen to apply to the total maintenance amount in paragraph sixteen when that paragraph took effect. Applying this interpretation, the court concluded that husband owed $8,952 in arrears based on his increases in income from 2000 to 2004. Husband argues, and we agree, that the court's conclusion is inconsistent with the plain language of the final order. The ten-percent increase applied only to the $700 amount and only during the period when wife remained in the marital home. The court's conclusion to the contrary was error.

III. Children's Savings Account
¶ 19. Prior to the parties' divorce, a savings account was created for each child. The final order provided that husband would "continue to contribute money to [the younger child's] savings account until the amount deposited in this account is equal to the amount deposited by the parties into [the older child's] account (approximately $42,000)." The final order provided no deadline by which this was to be accomplished. The family court nevertheless concluded that husband had to fulfill this obligation without delay and ordered husband to pay into the younger child's account within thirty days the difference between the balances of the two accounts.
¶ 20. The family court's order errs in two respects. First, it ignores the final order's language that the amount deposited into the younger child's account shall equal the amount deposited into the older child's account, not the amount held in that account at a given time. Second, the court imposed a short deadline for balancing the accounts when no deadline existed in the final order. Though husband will certainly have to comply with the final order, requiring full compliance within a short period of time while the children are still relatively young exceeded the trial court's discretion.

IV. Attorney's Fees
¶ 21. In divorce cases, the trial court may award attorney's fees at its discretion "where justice and equity so indicate." Turner v. Turner, 2004 VT 5, ¶ 9, 176 Vt. 588, 844 A.2d 764 (mem.) (quotations omitted). The primary consideration in making an award "is the ability of the supporting party to pay and the financial needs of the party receiving the award." Id. The trial court found that husband was able to pay his attorney's fees outright while wife had incurred substantial debt. Consequently, the court awarded wife $25,000 for attorney's fees, $1,750 for the accountant, and $350 for the career counselor.
¶ 22. A reversal of a support or maintenance order does not necessarily require a reversal of an award of attorney's fees. Smith v. Stewart, 165 Vt. 364, 375, 684 A.2d 265, 272 (1996). However, in light of the wholesale reconsideration of spousal maintenance required in this case, we conclude that a reconsideration of the parties' financial positions and their respective abilities to pay professional fees is warranted. We thus remand the award of professional fees for reconsideration after a recalculation of maintenance and arrears.
Reversed and remanded for proceedings consistent with this opinion.
NOTES
[*] Husband moved to strike the contents of a post-oral-argument letter filed by wife's attorney that purported to correct factual misstatements made by both counsel at oral argument. Because we did not consider the letter in reaching our decision, husband's motion is denied as moot.