2008 VT 17

## Carl M. Smith v. Emile Desautels and Desautels House Movers, Inc.

[953 A.2d 620]

No. 06-146

Present: **Dooley, Johnson, Skoglund and Burgess, JJ., and Cook, D.J. (Ret.), Specially Assigned**

Opinion Filed March 7, 2008

*Eugene Rakow* of *Eugene Rakow, P.C.*, and *L. Maxwell Taylor* and *Alan Biederman* of *Biederman Law Office*, Rutland, for Plaintiff-Appellant.

*Andrew Jackson*, Middlebury, for Defendants-Appellees.

¶ 1. **Dooley, J.** Plaintiff, Carl Smith, was working for defendants, Desautels House Movers, Inc. and Emile Desautels, when an acetylene tank fell on his hand and crushed it. Although defendants did not have workers' compensation insurance, they paid for workers' compensation benefits claimed and received by plaintiff. After exhausting his benefits, plaintiff brought this suit, seeking damages for defendants' negligence. The superior court granted summary judgment for defendants, concluding that plaintiff had made a binding election to claim compensation pursuant to 21 V.S.A. § 618(b) and was, therefore, barred from bringing this civil action. Plaintiff appeals, arguing that: (1) the superior court does not have jurisdiction to determine whether an election occurred; and (2) his acceptance of compensation did not waive his right to a civil suit because he never completed a signed, written agreement approved by the Commissioner. See *id.* § 618(d). We find no jurisdictional bar to the superior court's action but conclude that, under the terms of the statute, plaintiff did not waive his right to a civil suit against his employer. We therefore reverse and remand.

¶ 2. The undisputed facts are as follows. Plaintiff was injured in the course of his employment for defendants in May 2002 and thereafter, in June, filed a claim for benefits under Vermont's workers' compensation statutes. 21 V.S.A. §§ 601-711. Defendants did not carry workers' compensation insurance at the time of the accident, contrary to statute. See *id.* § 687.

¶ 3. In July, a workers' compensation specialist in the Department of Labor notified the parties of some of their rights with respect to the claim. The specialist further urged defendants to show proof of workers' compensation insurance coverage and advised both parties to obtain legal counsel. By December 2002, the Department had calculated the weekly benefit that the workers' compensation statutes afforded plaintiff, and defendants paid this amount during the period in which plaintiff was deemed temporarily totally disabled. Defendants also covered the costs of plaintiff's surgery. By that time, defendants had counsel, but plaintiff did not.

¶ 4. In September 2003, while defendants were still paying temporary total disability compensation pursuant to the Department schedule, plaintiff, through counsel, sent a letter to defendants' attorney stating that he would be filing a negligence suit against defendants in addition to pursuing his workers' compensation claim. Defendants continued to pay, and plaintiff continued to accept, temporary total disability payments until December 2003, when defendants filed a notice to discontinue benefits based on a physician's determination that plaintiff had reached a medical end result at a 17% whole-person impairment. The Department approved this request. Thereafter, defendants paid plaintiff permanent partial compensation at $296 per week for 68.85 weeks. Shortly after these benefits were discontinued, in April 2005, plaintiff brought this negligence suit in superior court. The court granted defendants' motion for summary judgment[1] in March 2006, and plaintiff's appeal followed.

---

[1] Defendants brought their motion to dismiss under Vermont Rule of Civil Procedure 12(b)(6) and alternatively moved for summary judgment under Rule 56. Plaintiff responded to both motions with one memorandum, and the superior court disposed of the case by concluding that plaintiff had failed to state a claim on which relief could be granted. In light of our disposition of the matter as an issue of law requiring minimal fact development, we find no significant difference between the two rules in these circumstances, and review defendants' motion de novo. See *Bethel v. Mount Anthony Union High Sch. Dist.*, 173 Vt. 633, 634, 795 A.2d 1215, 1217 (2002) (mem.) (stating that "purpose of a Rule 12(b)(6) motion is

¶ 5. Two statutory subsections are central to the resolution of this case. One is 21 V.S.A. § 618(b), which provides:

> A worker who receives a personal injury by accident arising out of and in the course of employment with an employer who has failed to comply with section 687 of this title may elect to claim compensation under this chapter or to bring a civil action against the employer for full damages resulting from the work injury.

Section 687 provides alternative means for the employer to "secure compensation" for employees, the most common of which is to purchase workers' compensation insurance. *Id.* § 687(a). It is undisputed that defendants failed to comply with § 687 because they failed to obtain any of the alternative types of security.

¶ 6. The second subsection is § 618(d), which provides:

> The acceptance of any payment by an employee for a work injury shall not bar a subsequent election to pursue a civil suit under subsection (b) of this section unless the employee, with knowledge of his or her rights, signs a written agreement waiving the right to pursue a civil action. The agreement shall be filed with and approved by the commissioner. If the employer fails to pay any amount due and owing under the workers' compensation act the waiver agreement shall be void and the employee may pursue a civil action.

Plaintiff never signed an agreement waiving his right to pursue a civil action, and no such agreement was filed with and approved by the Commissioner.

¶ 7. The merits of this case involve the interplay between the two subsections. The superior court held that § 618(b) requires an election between workers' compensation and tort damages and that plaintiff made a clear election by applying for and accepting workers' compensation. It held that the requirements of § 618(d) apply only if the employer makes payments voluntarily and not pursuant to direction of the Commissioner of Labor, as it found occurred here.

¶ 8. The plaintiff argues he loses the right to sue only if he signs a written waiver pursuant to § 618(d) and if it is approved

---

to test the law of the claim, not the facts which support it" (quotation and citation omitted)).

by the Commissioner. In the absence of such written waiver, he contends, acceptance of workers' compensation payments, whether or not directed by the Commissioner, does not defeat the right to sue. Further, plaintiff argues that only the Commissioner, and not the superior court, can determine whether he has lost the right to sue. We start with the jurisdictional question, and, because we find that the superior court had jurisdiction to decide whether plaintiff could bring this action, we proceed to the merits. Each of plaintiff's arguments presents an issue of law we review de novo. *State v. Valyou*, 2006 VT 105, ¶ 4, 180 Vt. 627, 910 A.2d 922 (mem.).

¶ 9. We note at the outset that plaintiff has raised his jurisdictional argument for the first time on appeal. Because it is a challenge to jurisdiction, however, we may consider it. See *Braun v. Greenblatt*, 2007 VT 53, ¶ 7, 182 Vt. 29, 927 A.2d 782.

¶ 10. In making his jurisdictional argument, plaintiff relies primarily on 21 V.S.A. § 606, which provides that "[q]uestions arising under the provisions of this chapter, if not settled by agreement . . . , shall be determined, except as otherwise provided, by the commissioner." Because all provisions about workers' compensation are in chapter 9 of Title 21, plaintiff argues that all legal questions in the domain of workers' compensation are in the exclusive jurisdiction of the Commissioner and may not be addressed by the superior court.

¶ 11. Plaintiff's argument is very broad and would apply to any legal question. We do not think that § 606 can be read as creating jurisdictional exclusivity as broadly as plaintiff argues. See *Dominguez ex rel. Hamp v. Evergreen Res., Inc.*, 121 P.3d 938, 943 (Idaho 2005) (under identical Idaho statute, Industrial Commission and courts have concurrent jurisdiction to determine which has jurisdiction over the controversy); *Employers Mut. Cos. v. Skilling*, 644 N.E.2d 1163, 1165 (Ill. 1994) (identical language in Illinois statute does not make jurisdiction of Illinois Industrial Commission exclusive). Although we have not analyzed § 606 in detail, we have followed the approach of the Supreme Court of Illinois in *Skilling*. For example, many decisions of this Court have involved work-related negligence actions brought under the dual-liability provisions of 21 V.S.A. § 624. In those cases, the superior court has determined whether §§ 622 and 624(a) allow for civil suits, rather than referring the question to the Commissioner.

See, e.g., *Edson v. State*, 2003 VT 32, ¶ 4, 175 Vt. 330, 830 A.2d 671; *Herbert v. Layman*, 125 Vt. 481, 481-82, 218 A.2d 706, 707 (1966), *overruled on other grounds by Whitney v. Fisher*, 138 Vt. 468, 470, 417 A.2d 934, 936 (1980). As the Illinois court did in *Skilling*, 644 N.E.2d at 1165-66, we held in *Gallipo v. City of Rutland*, 2005 VT 83, ¶ 44, 178 Vt. 244, 882 A.2d 1177, that the doctrine of primary jurisdiction should govern whether the superior court should decide a legal question arising under the workers' compensation chapter. See also *Travelers Indem. Co. v. Wallis*, 2003 VT 103, ¶¶ 9-18, 176 Vt. 167, 845 A.2d 316 (applying primary jurisdiction to challenge to Commissioner's administration of interim compensation payments). Under the doctrine, we consider three main factors: "(1) whether the question to be decided is one of law or is a mixed question of fact and law; (2) whether an alternative tribunal with expertise is available to adjudicate the controversy; and (3) whether the plaintiff is attacking the validity of a statute." *Gallipo*, 2005 VT 83, ¶ 44. In *Gallipo*, the workers' compensation carrier sought the return of interim benefits paid, under the theory of unjust enrichment, because the Commissioner eventually ruled that plaintiff was not eligible for compensation. We held that the superior court had jurisdiction over the claim primarily because the main question was one of law-whether unjust enrichment applied-and because unjust enrichment is based on standards of the common law developed by court decision. *Id.* ¶ 45. We also noted that "[w]e are already in a proceeding between the parties; moving to another forum is inefficient." *Id.*

■ ¶ 12. We conclude that *Gallipo* governs here. We are addressing a pure question of law. The Commissioner has no particular expertise in adjudicating that question. Plaintiff argues that the Legislature intended the Commissioner to decide the waiver question because any written waiver must be approved by the Commissioner. We think instead that expertise in deciding whether a particular waiver is knowing and intelligent is different from statutory construction, which is a pure question of law.

¶ 13. In saying this, we do not suggest that the view of the Commissioner on the legal question would be unhelpful. Defendants could easily have obtained the Commissioner's view by seeking a ruling on election of remedies from the Commissioner when plaintiff made clear he intended to accept compensation and also bring suit. Defendants failed to do so then, and they are not entitled to do so now.

¶ 14. As we stated in *Gallipo*, when we are already in an independent proceeding in court, moving the proceeding to the Commissioner is "inefficient." *Id.* On this point, plaintiff has the unrealistic expectation that if we found that the Commissioner has exclusive jurisdiction to find whether a waiver occurred, the superior court action would move forward to trial without further consideration of the waiver question. In fact, the proper resolution would be to stay the tort action while the parties proceeded before the Commissioner on the waiver question. See *Reep v. United States*, 557 F.2d 204, 208 (9th Cir. 1977) (Federal Tort Claims Act case is stayed pending coverage determination by agency under the Federal Employees Compensation Act).

¶ 15. For the above reasons, we conclude that the doctrine of primary jurisdiction is applicable and supports the superior court determining whether a waiver occurred.

¶ 16. We turn next to the question of whether plaintiff's receipt of workers' compensation benefits, as calculated by the Department, is a binding election of remedies that precludes this negligence suit. On this point, it is undisputed that § 618(b) contemplates an election of remedies, a basic choice between a claim for compensation and a negligence suit. Moreover, apart from the effect of § 618(d), plaintiff has not challenged the superior court's finding that he made a binding election to receive compensation under § 618(b). Thus, we do not address the validity of that conclusion. The issue then is whether § 618(d) changes that result.

¶ 17. Apart from our usual presumption in favor of the plain and ordinary meaning of statutory language, *Butler v. Huttig Bldg. Prods.*, 2003 VT 48, ¶ 11, 175 Vt. 323, 830 A.2d 44 ("When construing the [Workers' Compensation] Act, we seek to implement the Legislature's intent as expressed in the words of the Act itself."), two other canons of statutory construction guide our review in this case.[2] The first, and more commonly applied in this context, is that our workers' compensation statutes are

---

[2] The Legislature has precluded application of an additional canon of statutory construction — that statutes in derogation of the common law be strictly construed — at least to the extent that this interpretive device is contrary to the statutes' "general purpose to make uniform the law of those states which enact it." 21 V.S.A. § 709; see *Kittell v. Vt. Weatherboard, Inc.*, 138 Vt. 439, 440-41, 417 A.2d 926, 926-27 (1980) (per curiam).

liberally construed in favor of employees. *Id.* ¶ 12; 3B N. Singer, Statutes and Statutory Construction § 75:3, at 32 (6th ed. 2003 rev.) ("The liberal interpretation is used to resolve any reasonable doubts in favor of the worker because it was for the Workers' benefit that the act was passed."). Secondly, we are mindful that specific statutory provisions generally trump more general ones. *Town of Brattleboro v. Garfield*, 2006 VT 56, ¶ 10, 180 Vt. 90, 904 A.2d 1157 (describing "long-standing rule of statutory construction that where two statutes deal with the same subject matter, and one is general and the other specific, the more specific statute controls").

■ ■ ¶ 18. We start, as we must, with the plain meaning of the words used in the statute. The superior court narrowed the wording by holding that the statute applied only when the worker received voluntary payments.[3] The court reasoned:

> The intent of [§] 618(d) is to prevent employees from being prejudiced if they accept voluntary payments from their employer. The section is not intended to apply in the situation where an employer makes payments required by the Department of Labor and Industry, such as is the case here.

It is difficult to square the court's holding with the language of the statute. Nowhere does the subsection indicate that it is limited to voluntary payments. Indeed, it specifically applies to *"any payment."* 21 V.S.A. § 618(d). We find nothing in the statutory wording to suggest that the intent was as limited as the superior court held. Generally, we do not read extra conditions into a statute unless they are necessary to make the statute effective. *Brennan v. Town of Colchester*, 169 Vt. 175, 177, 730 A.2d 601, 603 (1999).

¶ 19. The superior court's construction of § 618(d) also appears too limited in light of the statutory scheme. Normally, a worker cannot elect to sue the employer in tort because workers' compensation is the exclusive remedy. 21 V.S.A. § 622. Furthermore, at least initially, the worker has no way of knowing that an employer has failed to comply with its obligation to secure compensation

---

[3] The parties disagree about when this rationale applies and about when the payments became involuntary in this case. In view of our disposition, we need not address this issue.

through insurance or other means. Thus, whether the worker accepts voluntary payments from the employer or applies to the Department of Labor for compensation, there is a significant chance that the worker will be unaware of the alternative of bringing a negligence action and will not make a knowing and intelligent waiver of that alternative, particularly if the worker is proceeding without legal counsel.

■ ■ ¶ 20. We are fortunate in this case to have the benefit of legislative history that shows that the Legislature had exactly this concern.[4] Subsections (b) through (d) were added in 1997 by Act

---

[4] The concurrence argues that we are precluded from looking at the legislative history because the language of § 618 is plain, even though our purpose in statutory construction is to implement the intent of the Legislature. The concurrence finds further that prohibition in the memorandum decision in *State v. Kimmick*, 2007 VT 45, ¶ 12, 181 Vt. 635, 928 A.2d 489. Although the quoted words are in that decision, there is no indication that they are about the use of legislative history.

We have explained that in determining the intent of the Legislature "we look to the words of the statute itself, the legislative history and circumstances surrounding its enactment, and the legislative policy it was designed to implement." *Perry v. Med. Practice Bd.*, 169 Vt. 399, 406, 737 A.2d 900, 905 (1999); see also *Town of Lunenburg v. Supervisor & Bd. of Governors of Unorganized Towns & Gores of Essex County*, 2006 VT 71, ¶ 7, 180 Vt. 578, 908 A.2d 424 (mem.). Consistent with that approach, we have used legislative history on numerous occasions, even where we have found the meaning of the statute to be plain, if, as here, the history confirms the meaning taken from the language. See *State v. Oscarson*, 2004 VT 4, ¶ 19, 176 Vt. 176, 845 A.2d 337 ("we hold that the plain language, legislative history, and Reporter's Notes . . . support the conclusion"); *Judicial Watch, Inc. v. State*, 2005 VT 108, ¶ 11, 179 Vt. 214, 892 A.2d 191 (agency interpretation of the statute "is consistent with its plain language and legislative history" and therefore entitled to substantial deference); *Butson v. Dep't of Employment & Training*, 2006 VT 10, ¶ 4, 179 Vt. 599, 892 A.2d 255 (mem.) ("the legislative history . . . shows that this plain reading of the statute mirrors the Legislature's intent . . . ."). In that circumstance, the legislative history supports the direction found from the wording and confirms that it is a proper expression of legislative intent. It is an entirely different situation where the conclusion suggested from the legislative history is different from that expressed in the language of the statute. See *Colwell v. Allstate Ins. Co.*, 2003 Vt. 5, ¶¶ 9-11, 175 Vt. 61, 819 A.2d 727.

As noted, *supra*, ¶ 7, we are dealing with the interplay of two subsections of the statute. In reaching our conclusion, we draw not only on the language of the subsections, but also on other canons of construction — for example, "specific statutory provisions generally trump more general ones," *supra*, ¶ 17 — and the need for strict enforcement of statutory language relating to waiver, *infra*, ¶ 24. In this context, we think it is appropriate to use legislative history to reinforce conclusions drawn from other interpretative techniques.

No. 19, § 1 in order to provide greater sanctions for employers who violate § 687 by failing to purchase workers' compensation insurance or other surety.[5] In addition to the provisions before us, the Legislature reversed the burden of proof on negligence and proximate cause in any civil action and prohibited many common-law defenses, *id.* (adding 21 V.S.A. § 618(b)); made violation of § 687 a crime, *id.* § 10 (adding 13 V.S.A. § 2025); authorized the Commissioner to close the premises of an employer who fails to comply with § 687 within two years of receiving an order to do so, *id.* § 9 (adding 21 V.S.A. § 692(c)); and made the officers and majority stockholders of a corporation, or partners of a partner-ship, personally liable for any benefits owed to the injured employee, *id.* § 7 (amending 21 V.S.A. § 687(b)).

¶ 21. Subsection (d) of § 618 was not part of the bill as it passed the House of Representatives and later passed second reading in the Senate. It was added as a result of a floor amendment proposed by Senator Sears for the Senate Judiciary Committee, just before Senate passage. See S. Journal, 1997 Biennial Session 763-64 (Vt. April 30, 1997). The discussion in the Senate Judiciary Committee indicates that Senators were concerned with the risk of an unknowing waiver of the right to sue and wanted to add requirements to ensure the worker was protected.[6]

---

[5] In presenting the bill to the Senate Judiciary Committee, Commissioner of the Department of Labor and Industry, Mary Hooper, testified that one of the purposes of the bill was to respond to "a number of employers who are failing" to carry workers' compensation insurance by adding "a number of different ways of getting at that issue" and "incentives within the system for employers to carry worker's compensation." Hearing on H.32 before Senate Judiciary Committee, 1997 Leg. 1 (Vt. Apr. 29, 1997) (statement of Mary Hooper, [Commissioner ] of Labor & Industry).

[6] The issue was discussed in the Senate Judiciary Committee on April 29, 1997. See generally Testimony on H.32 before Senate Judiciary Committee (Vt. April 29, 1997). At that point, the draft provided the worker an election as specified in § 618(b): "A worker . . . may elect to claim compensation under this chapter or to bring a civil action against the employer." The Commissioner of Labor and Industry, and her counsel, were testifying, and Senator John Bloomer questioned whether the election would work in practice.

> Sen. Bloomer: . . . The problem with most worker's comp cases are a person needs money, and if they've been hurt, if I'm an employer and I don't have insurance, I give you a check for what's required, my bet is that you're going to cash it. And if I was the employer, I would then argue you made an election to take it under . . . without even knowing you're right — so I don't know how the election works.

¶ 22. We note that this case proceeded initially exactly in the way that raised the concern behind the adoption of § 618(d).

> Mr. Monahan [Counsel for the Department]: The Department certainly wouldn't interpret that as making your election. . . . [T]he Department's view is that the election exists — is the employee's and must be a knowing or conscious [election]. It can't be the product of coercion or failure to understand your (inaudible).
>
> . . . .
>
> Ms. Hooper: Could we address that?
>
> Mr. Monahan: We certainly could try.

*Id.* at 8. After further discussion, the hearing concluded with the Chair of the Committee, Senator Richard Sears, saying:

> Senator Sears: Well, I think we'll need to tighten up this election language, and I would suggest that — I know we've got to this. Can you get some language to tighten this election up to the committee for the committee hearing tomorrow morning?

*Id.* at 9.

The committee met on April 30th, and Charles Bristow from the Legislative Council presented the amendment that became § 618(d):

> Mr. Bristow: The changes to the amendment I'm passing out now is also a — is language with some changes from drafting stylistically that I received from the general counsel for the Department of Labor and Industry. It attempts to answer the question raised by Senator Bloomer, and that is what about the employee who is injured on the job, the employer runs out and makes some payments to that injured employee and the employee may not know that acceptance of that payment could conceivably eliminate the possibility of filing a later civil action. This is the department's language, again, with some style changes.

Discussion of H.32, Senate Judiciary Committee, 1997 Biennial Session (Vt. April 30, 1997).

He added later in explaining the amendment:

> Mr. Bristow: The first part is simply a statement that the acceptance of a payment of worker's comp from an employer is not going to eliminate the employee's right to file civil action.

*Id.* Senator Bloomer added:

> [T]he employee can now elect instead of taking those payments to go and bring civil suit. . . . Of the civil suit, my concern yesterday was if you accept one of those payments, have you waived your right to a civil suit[?] This tries to clarify that you haven't unless it's a written agreement that's been approved by the commissioner. . . . This basically says . . . the commissioner has to approve a written agreement that you won't proceed civilly.

*Id.*

The committee approved the amendment, and it was added on the Senate floor as 21 V.S.A. § 618(d).

Plaintiff filed a workers' compensation claim in June 2002, apparently without benefit of the advice of counsel. As reflected in a letter to plaintiff and defendants from a workers' compensation specialist in the Department in July, defendants were continuing to pay plaintiff's salary and cover his medical expenses. The letter urged each party to obtain counsel, noting that "[t]here are many rights and responsibilities of both the injured worker and the employer that you may not be familiar with," but never specifically said that plaintiff had a right to sue rather than accepting compensation. A follow-up letter in December was similar, noting that "[w]hile your employer has accepted liability for the injury and is paying benefits, it would be in your best interest to have legal counsel to ensure you receive all benefits to which you may be entitled under Vermont's Workers' Compensation Act." This letter did not state that plaintiff could elect to bring suit. Plaintiff finally obtained counsel many months later, and counsel immediately stated that plaintiff intended to bring suit.

¶ 23. Whether we view defendants' payments as voluntary or as coerced by the actions of the Department, there is no indication that plaintiff made a knowing and intelligent waiver of the right to bring suit rather than accepting compensation or that he was even aware of that alternative. Thus, as the Senate Judiciary Committee feared, the addition of the right to sue as a deterrent to failure to purchase workers' compensation insurance had a very limited effect in these circumstances.

¶ 24. In addition to the statutory construction canons we outlined above that support plaintiff's position, this is an area where we must strictly enforce the statutory requirements to protect the employee. Thus, in comparable circumstances where the statute requires a writing to give effect to a waiver, the courts have been unwilling to find a waiver without the specific writing described in the statute. See *Nationwide Ins. Co. v. Resseguie*, 980 F.2d 226, 232 (3d Cir. 1992) (applying Pennsylvania law); *Walker v. Grant County Sav. & Loan Ass'n*, 803 S.W.2d 913, 916 (Ark. 1991) (requirement of a writing to waive debtor's right to notice of sale of collateral constitutes "protection of post default debtors from the potential of overbearing tactics and intimidation by secured parties"); *All Valley Acceptance Co. v. Durfey*, 800

S.W.2d 672, 674-75 (Tex. App. 1990) (provision requiring writing to waive notice of disposition of collateral is "strictly construed to require a specific, knowing waiver of the right to notice, in writing and actually bearing the signature of the debtor"); *Clements v. Travelers Indem. Co.*, 850 P.2d 1298, 1305 (Wash. 1993) (failure to enforce statutory requirement of a written rejection of underinsured motorist coverage "would then effectively delete the legislatively created requirement"). In order to deprive the employee of his right to sue, there must be strict compliance with the explicit requirements of § 618(d). That compliance did not occur here.

¶ 25. Although the Legislature passed § 618(d) to protect the worker's election remedy, the employer is still able to force an election by the worker as long as it is knowing and voluntary pursuant to the terms of the statute. Thus, before making any compensation payments, whether voluntarily or under the direction of the Department, the employer can insist that the worker waive the right to sue. The employer never did that here. In fact, even when plaintiff's lawyer informed defendants' lawyer that he intended to bring suit, defendants continued to pay benefits without addressing the election issue. In the absence of a waiver that complied with § 618(d), plaintiff never made a binding election that precluded his right to bring this action. The dismissal of this action was error.

*Reversed and remanded.*

¶ 26. **Burgess, J.,** concurring. Today's ruling is supported by the plain language of 21 V.S.A. § 618. The majority's foray into legislative history is therefore entirely unnecessary, and potentially confusing in some future dispute over the meaning of a statute otherwise clear on its face. When interpreting a statute, we look first to the plain language of the text, *In re D'Antonio*, 2007 VT 100, ¶ 7, 182 Vt. 599, 939 A.2d 493 (mem.), and presume that the Legislature intended the ordinary meaning of the words. *Brennan v. Town of Colchester*, 169 Vt. 175, 177, 730 A.2d 601, 603 (1999). Legislative history is to be referenced only when the words of the statute are ambiguous, and thus "do not provide sufficient guidance to ascertain legislative intent." *State v. Kimmick*, 2007 VT 45, ¶ 12, 181 Vt. 635, 928 A.2d 489 (mem.); *LeClair v. Reed ex rel. Reed*, 2007 VT 89, ¶ 5, 182 Vt. 594, 939 A.2d 466 (mem.) ("Where the language of a statute is clear, our inquiry is at an

end and we apply the statute in accordance with its plain meaning.") (quotations omitted); *In re Carroll*, 2007 VT 19, ¶ 9, 181 Vt. 383, 925 A.2d 990. Nevertheless, despite the clarity of § 618(b) and (d), the majority looks to, and cites in support of our reading of this statute, legislative committee commentary concerning amendments to the Act. In my view, such gratuitous exploration should be avoided, lest it be suggested, erroneously, that language as plain as that in § 618 may still be open to interpretation based on legislative comments arguably inconsistent with the actual words enacted.