NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 11

No. 2016-389

| | |
|---|---|
| Estate of Jamis J. Lott | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windham Unit, |
| | Civil Division |
| | |
| Robin O'Neill | January Term, 2017 |

Michael R. Kainen, J.

James A. Valente of Costello, Valente & Gentry, P.C., Brattleboro, for Plaintiff-Appellee.

Ian P. Carleton and Kevin A. Lumpkin of Sheehey Furlong & Behm P.C., Burlington, for Defendant-Appellant.


PRESENT:  Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.


¶ 1.     **DOOLEY, J.**  This interlocutory appeal presents the question of whether the Sixth Amendment right to assistance of counsel is violated when the plaintiff in a civil wrongful death action attaches funds the defendant intends to use for her legal defense to homicide charges stemming from the death at issue in the civil case.  Defendant appeals a trial court decision permitting such an attachment.  We affirm.

¶ 2.     The relevant facts are as follows.  Defendant is charged with aggravated murder and two counts of murder in the second degree in the deaths of two men.  Her trial is pending and a private law firm represents her in that matter.  Plaintiff is the estate of one of the deceased men, which pursuant to 14 V.S.A. § 1492 has brought a wrongful death action on behalf of the next of

kin. In its filing, plaintiff obtained an attachment freezing defendant's assets, including the retainer she provided for her criminal defense.

¶ 3.     In response, defendant filed a motion arguing that a recent U.S. Supreme Court case, Luis v. United States, __ U.S. __, 136 S. Ct. 1083 (2016),[1] held that the Sixth Amendment to the U.S. Constitution prohibited the attachment of untainted funds a defendant wished to use to hire counsel of choice as legal representation in a criminal matter.  Plaintiff, unsurprisingly, read Luis differently and argued that the Sixth Amendment prohibited only a prosecutor from attaching untainted funds to be used for criminal legal defense.  Following a hearing on defendant's motion, the trial court issued a written decision finding that, though defendant's arguments were persuasive, Luis was inapplicable to the attachment obtained in this suit.  The court read Luis for the proposition that "[t]he evil the Sixth Amendment seeks to guard against is a prosecutor civilly seizing a defendant's money to prevent him or her from hiring an attorney.  Not the court's issuance of an attachment on funds by any creditor, where the defendant also prefers to use the money to hire a lawyer."

¶ 4.     In the same decision, the court granted defendant leave to appeal its interlocutory ruling pursuant to Vermont Rule of Appellate Procedure 5.1, which permits interlocutory appeals when an order "(A) conclusively determines a disputed question; (B) resolves an important issue completely separate from the merits of the action; and (C) will be effectively unreviewable on appeal from a final judgment."  V.R.A.P. 5.1(a)(1).  This appeal followed.

¶ 5.     We review questions of law de novo.  Smith v. Desautels, 2008 VT 17, ¶ 8, 183 Vt. 255, 953 A.2d 620.  And we begin our consideration of defendant's argument with the facts of Luis.  A federal grand jury indicted Sila Luis for conspiring to commit healthcare fraud against the

---

[1] This decision includes a plurality opinion written by Justice Breyer and joined by Chief Justice Roberts and Justices Ginsburg and Sotomayor; a concurring opinion written by Justice Thomas; a dissent written by Justice Kennedy and joined by Justice Alito; and a dissent written by Justice Kagan. The opinions written by Justices Breyer, Thomas, and Kennedy are discussed infra.

federal government by using the healthcare companies she operated to bill Medicare for services neither medically necessary nor actually provided. The government alleged that the charged fraud resulted in $45 million improperly paid to Luis' companies. Luis, __ U.S. at __, 136 S. Ct. at 1103 (Kennedy, J., dissenting). By the time Luis was indicted, she had spent much of the fraudulently obtained money. Pursuant to 18 U.S.C. § 1345, the government sought an order prohibiting Luis from dissipating her remaining assets, including $2 million in her possession, so that these assets could be used to pay criminal penalties and restitution after conviction. Id. at __, 136 S. Ct. at 1087-88 (plurality opinion). 18 U.S.C. § 1345 permits a court order freezing certain assets of a criminal defendant charged with violating federal healthcare and banking laws, including three types of assets: "(1) property 'obtained as a result of' the crime, (2) property 'traceable' to the crime, and (3) other 'property of equivalent value.' " Id. at __, 136 S. Ct. at 1087 (quoting 18 U.S.C. § 1345(a)(2)). The court order sought by the government fell into the third of these categories, freezing property belonging completely to Luis and untainted by the charged crimes. Id. at __, 136 S. Ct. at 1087. The district court granted the order the government sought, and the U.S. Court of Appeals for the Eleventh Circuit affirmed. Luis petitioned for certiorari, which the U.S. Supreme Court granted.

¶ 6.    There is no majority opinion in Luis. Justice Breyer's four-justice plurality opinion adopted the broadly framed question presented in Luis' petition for certiorari: "whether the pretrial restraint of a criminal defendant's legitimate, untainted assets (those not traceable to a criminal offense) needed to retain counsel of choice violates the Fifth and Sixth Amendments." Id. at __, 136 S. Ct. at 1088 (quotation and alteration omitted). It is clear from the Luis opinion that "pretrial" in that case means prior to the criminal trial. The plurality answered the Sixth Amendment question in the affirmative, as did Justice Thomas' concurrence. Id. at __, 136 S. Ct. at 1096; id. at __, 136 S. Ct. at 1097 (Thomas, J., concurring). Although the question presented was expansively framed, the Court's analysis was narrowly focused.

3

¶ 7. That analysis began with the Sixth Amendment, which guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. This right is echoed in our state constitution, which provides that "in all prosecutions for criminal offenses, a person hath a right to be heard . . . by counsel."[2] Vt. Const. ch. I, art. 10. The right to assistance of counsel is "fundamental," but it is also limited: " '[T]he Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire.' " Luis, __ U.S. at __, 136 S. Ct. at 1089 (plurality opinion) (quoting Caplin & Drysdale v. United States, 491 U.S. 617, 624 (1989)). A defendant has no right "to an attorney who is not a member of the bar, or who has a conflict of interest due to a relationship with an opposing party," nor does a defendant unable to afford counsel have a right "to have the [g]overnment pay for his preferred representational choice." Id. at __, 136 S. Ct. at 1089.

¶ 8. The plurality's conclusion that the Sixth Amendment bars the freezing of untainted funds under the facts of Luis turns on a primary point, a point which also supports our conclusion that Luis does not control here. In Luis, the government was exercising a statutory right to forfeiture connected to a criminal prosecution, and the freezing of assets was done to ensure that property to be frozen was available for forfeiture at the end of the criminal case if the government secured a conviction. That right turns on an elementary tenet of property law. Id. at __, 136 S. Ct. at 1090. The government is statutorily authorized to take by forfeiture property tainted by its connection with a property-based crime because the possessor has an imperfect ownership interest: "The robber's loot belongs to the victim, not to the defendant." Id. at __, 136 S. Ct. at 1090. A criminal never has perfect possession of property obtained through criminal activity; a forfeiture

---

[2] Though our state constitution includes a right to the assistance of counsel, neither party has argued that this right precludes the attachment at issue here. Thus, we do not consider whether the state constitution could bar the action plaintiff seeks. We confine our analysis to the federal constitution and the Luis decision that defendant argues controls.

4

action is authorized because the ownership interest of the party seeking forfeiture relates back to the time of theft. But property obtained through legitimate, noncriminal means remains the sole property of the owner, whether that owner has obtained other property through criminal activity or not. Id. at __, 136 S. Ct. at 1090. The Luis plurality thus drew a sharp line between the government's seizure of "tainted" and "untainted" property. Within the context of the statute at play in Luis, as the victim of Luis' alleged crime, the government retained ownership of and could seize allegedly fraudulently obtained property. The government's right to seize property that Luis obtained through legitimate means was different, and created solely by statute, because the government has no exercisable interest in that property.

¶ 9. The plurality drew support for its conclusion from precedent, common law, and policy. As to precedent, two prior decisions lay the foundation for the Luis plurality decision. One of those is especially relevant here. In Caplin & Drysdale, the client of the appellant law firm was charged with multiple counts of drug distribution. 491 U.S. at 619-20. Exercising a right similar to the statutory forfeiture right in Luis, the government sought, and received, court-ordered temporary forfeiture of assets in the client's possession and obtained through the crimes charged. Prior to the government's seizure, the client retained the law firm to represent him in the associated criminal matter and placed a deposit in escrow for the firm. He then entered a plea agreement with the government and agreed to forfeit all of the seized assets. The law firm sought to retain the deposit money against the forfeiture, a result the Court denied, holding: "A defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the only way that that defendant will be able to retain the attorney of his choice." Id. at 626; see also United States v. Monsanto, 491 U.S. 600, 614 (1989) (holding Sixth Amendment does not "permit a defendant to use assets adjudged to be forfeitable to pay that defendant's legal fees").

5

¶ 10.    Caplin & Drysdale stands for the proposition that a statutorily authorized forfeiture of money held for legal representation in the underlying criminal case is permitted because it is the exercise of a legitimate property interest.  As explained by Luis, no Sixth Amendment conflict is created because the funds taken illegally from the government were, and are, the government's property irrespective of the criminal's possession of them.

¶ 11.    Turning to consideration of the common law, the plurality quoted and cited Blackstone for the eighteenth-century rule that a person may freely sell his property before conviction and it is only post-conviction that the government has any right to seize the convict's "goods and chattels."  Luis, __ U.S. at __, 136 S. Ct. at 1094 (plurality opinion).  Thus, any forfeiture remedy that gave the government a right of forfeiture in property owned by the criminal defendant—"untainted" property as the Court labeled it—was a modern construct that was subject to the Sixth Amendment.  Id. at __, 136 S. Ct. at 1088.

¶ 12.    This conclusion alone was sufficient for Justice Thomas, who concurred on that basis.  Id. at __, 136 S. Ct. at 1099 (Thomas, J., concurring).  The concurrence also notes that the Sixth Amendment effectively denounced the British rule denying counsel to felony defendants. Id. at __, 136 S. Ct. at 1097.  And since the amendment's guarantee is no "flimsy parchment barrier," it necessarily must include the prerequisites to its own fulfillment.  Id. at __, 136 S. Ct. at 1098 (quotation and alteration omitted).  The right to counsel includes, therefore, "constitutional protection for at least some of a defendant's assets."  Id. at __, 136 S. Ct. at 1098.  If it were otherwise, the government could preempt a defendant's right to counsel of choice by statutory authorization of forfeiture in all cases.  Id. at __, 136 S. Ct. at 1098; see also id. at __, 136 S. Ct. at 1094 (plurality opinion) (explaining that Congress could authorize pretrial asset restraint in other cases, "unleash[ing] a principle of constitutional law that would have no obvious stopping place").

¶ 13.    Finally, the plurality reasoned that permitting seizure of untainted assets would "render less effective the basic right the Sixth Amendment seeks to protect" by increasing public

6

defender caseloads because defendants otherwise able to pay for private representation would be rendered indigent through forfeiture. Id. at __, 136 S. Ct. at 1095 (plurality opinion). On this point, Justice Kennedy in dissent responded: "Given the large volume of defendants in the criminal justice system who rely on public representation, it would be troubling to suggest that a defendant who might be represented by a public defender will receive inadequate representation." Id. at __, 136 S. Ct. at 1110 (Kennedy, J., dissenting).

¶ 14. The plurality ultimately placed the considerations discussed above in a balancing test, balancing the Sixth Amendment right of the criminal defendant against the government's right to forfeiture to recoup the criminal penalty and its losses. Id. at __, 136 S. Ct. at 1093 (plurality opinion). It found that the Sixth Amendment right had greater weight with respect to "untainted" assets because in many cases the government would have tainted assets from which the government could obtain the criminal penalty and restitution, the common law did not allow for a pretrial forfeiture remedy, there is no stopping point for a government right to pretrial forfeiture remedies, and pretrial freezing of untainted property would force more cases into the underfunded public defender systems. See id. at __, 136 S. Ct. at 1093-96.

¶ 15. With the rationale of the plurality and concurrence in Luis in mind, we turn to whether the Sixth Amendment is violated by the attachment order in this case. In support of her position, defendant argues that the circumstances that created the Sixth Amendment violation the U.S. Supreme Court found were present in Luis are also present here. The court order in this case results in a freezing of defendant's funds designated for defense of the criminal case, and the funds are entirely "untainted"—that is, they are not fruits of the alleged criminal case.

¶ 16. It is important to recognize that this is neither a forfeiture case nor a criminal case. Nothing in the Luis plurality or concurrence suggests a holding applicable outside the context of remedies created by a criminal proceeding and the ultimate conviction, particularly asset forfeiture

7

and its unique reliance on property interests.[3]  Thus, there are significant differences between the context, facts, and law in this case and those in <u>Luis</u>, and these are unexplored in any of the <u>Luis</u> opinions.  Our conclusion is that the differences lead to a different result.

¶ 17.    In <u>Luis</u>, the United States was both the prosecutor of the criminal case and the victim of the alleged crime.  The security procedure employed was an adjunct to the criminal proceeding and could result in forfeiture only if the defendant was convicted.  The Court described it as follows:

> The [g]overnment here seeks a somewhat analogous order, i.e., an order that will preserve Luis' untainted assets so that they will be available to cover the costs of forfeiture and restitution <u>if she is convicted</u>, and if the court later determines that her tainted assets are insufficient or otherwise unavailable.

<u>Id</u>. at __, 136 S. Ct. at 1093 (emphasis added).  If we could put the holding of <u>Luis</u> into one sentence, it would read: The Sixth Amendment bars a prosecutor from depriving a defendant of the ability to hire a lawyer of the defendant's choice through forfeiture of funds necessary to hire that lawyer and derived from sources unconnected to the alleged crime.

¶ 18.    Here, although this action may arise out of a core of facts in common with the criminal case, there is no connection between the criminal proceeding and this private tort action.  The State is not a party in this action and is not seeking any relief here.  The plaintiff is using a temporary and pretrial security device that is generally available in any civil damage suit if plaintiff can show need and probability of success in the litigation.  Plaintiff is in the position of a creditor ensuring that it will be able to collect on a civil money judgment.

---

[3]  We note that to date the cases applying the <u>Luis</u> holding have read this decision to bar seizure of untainted assets within the context of a federal forfeiture statute.  See, e.g., <u>United States v. Jones</u>, 844 F.3d 636 (7th Cir. 2016); <u>United States v. Lindell</u>, 2016 WL 4707976 (D. Hawaii Sept. 8, 2016); <u>United States v. Johnson</u>, 2016 WL 4087351 (D. Utah July 28, 2016); <u>United States v. Marshall</u>, 2016 WL 3937514 (N.D.W. Va. July 18, 2016).  We have found no cases in which a court has applied <u>Luis</u> beyond this narrow context.

¶ 19. Unlike the common law background of forfeiture in criminal cases, where preconviction restraint of property subject to forfeiture was not allowed, we are dealing here with a pretrial security procedure, the use of which stretches back into the English law before the founding of the United States.[4] The specific device used here, trustee process, was authorized by Vermont statute in 1797. See Laws of Vermont, ch. LV, at 499 (Oct. 31, 1797). It is a form of attachment that was recognized by statute earlier that same year. See Laws of Vermont, ch. III, § 26, at 84-86 (March 2, 1797). Apparently because of its common law origins, this form of attachment appears in our case law even before the 1793 constitution that followed Vermont's entry as a state and under which the above statutes were adopted. See Conant v. Bicknell, 1 N. Chip. 50 (Vt. 1790); J. Beale, The Exercise of Jurisdiction in Rem to Compel Payment of a Debt, 27 Harv. L. Rev. 107, 112 (1913) (explaining that attachment law originally part of the Custom of London of Foreign Attachment became part of common law in some colonial jurisdictions). Further, before Vermont's statehood, the trustee process was claimed by New York, and New York courts ran in Vermont. Under the Duke of York's Laws of 1665-75, attachment was available in New York courts. See The Duke of York's Laws, 1665-75, in The Colonial Laws of New York from the Year 1664 to the Revolution Vol. I 15 (1894). To the extent that Luis turns on the common law of forfeiture, the common law of attachment suggests a different outcome.

¶ 20. A criminal defendant's ability to hire a lawyer of choice to defend a criminal proceeding depends, as this case demonstrates, on having the funds necessary to pay a lawyer. There are many reasons why such funds may be unavailable including that the defendant is in debt, for example, for necessities that cannot be ignored. In essence, defendant's position is that private

---

[4] The origin of prejudgment attachment and trustee process laws in the United States starts with the Custom of London of Foreign Attachment, which arose in the 17th century. See C. Drake, A Treatise on the Law of Suits by Attachment in the United States Ch. I, § 1, at 1 (7th ed. 1891); R. Wasserman, Equity Renewed: Preliminary Injunctions to Secure Money Judgments, 67 Wash. L. Rev. 257, 271-75 (1992).

creditors are required to bear the criminal defense costs of debtors who are criminal defendants because the debtor has a right to counsel in the criminal proceeding. That right is against the state and not private creditors.

¶ 21. Defendant suggests that the right being enforced in this civil proceeding exists because it is related to the criminal proceeding for which defendant needs to protect the ability to fund defense costs. That rationale is perverse. In essence, it requires that victims, uniquely, subsidize the criminal defense costs of the accused by foregoing the ability to collect some of their civil damages from the accused. We see no justification for treating plaintiff any differently than any other creditor in civil damage litigation, and the effect would be to add another exemption from execution and levy to the many already provided by Vermont law.[5] See generally 12 V.S.A. § 2740.

¶ 22. The plurality in Luis ultimately decided that case by balancing the defendant's Sixth Amendment right against the government's right to obtain property to pay itself back for loss caused by the defendant's crime. We need not reach a balancing test to decide this case. If we did, we would conclude that the result of balancing in this context is different than in Luis. As we stated above, the common law basis for plaintiff's action is different and includes a stronger interest for plaintiff here. Moreover, plaintiff's pretrial remedy has a clear bright-line stopping point largely because defendant's due process rights are not reduced simply because she is a criminal defendant. See Connecticut v. Doehr, 501 U.S. 1, 18 (1991) (explaining that statute permitting prejudgment attachment without showing exigent circumstances violates due process).

---

[5] We note that three states have by statute exempted attorney's fees paid in defense of a criminal case from forfeiture in connection with that case, essentially implementing, at least in part, the holding of Luis. See 725 Ill. Comp. Stat. 5/124B-145 (2016); Mich. Comp. Laws § 750.159m(6) (2016); N.Y. C.P.L.R. 1312(4) (Consol. 2016). In each state the exemption applies only in a forfeiture proceeding related to a criminal proceeding. In none of these states did the legislature exempt funds used or to be used for defense of a criminal case from levy and execution generally. See 725 Ill. Comp. Stat. 5/12-1001 (itemizing list of exemptions from levy and execution); Mich. Comp. Laws § 600.623 (same); N.Y. C.P.L.R. § 5205 (same).

While we acknowledge the scope of the Sixth Amendment right to provide defendant a lawyer of her choice, if she can fund such a choice, we cannot conclude that our decision in this case will have a significant effect on the caseloads of public defenders or impair the quality of representation defendant or others would receive. As we discussed above, we see no justification for the victim to subsidize the legal costs of defendant in defending her criminal case.[6]

Affirmed.

FOR THE COURT:

_____

Associate Justice

¶ 23. **ROBINSON, J., dissenting.** I conclude that the plurality's guidance in Luis v. United States, __ U.S. __, 136 S. Ct. 1083 (2016) (plurality opinion), and the sound reasoning on which that decision is based, militate against court-ordered attachment of untainted assets necessary to defendant's exercise of her Sixth Amendment right to counsel. For that reason, I dissent.

¶ 24. The Luis decision does not mandate a particular outcome in this case. Nevertheless, the reasoning in the plurality opinion is instructive and persuasive with respect to the issue in this case. Plaintiff in this case stands in much the same shoes as the government did in Luis, and the considerations underlying the plurality's resolution of the conflict between the government's statutory rights in that case and the defendant's Sixth Amendment interests apply in this case as well. The consequences of this analysis are burdensome for plaintiff in this case, and for any civil litigant seeking to attach a criminal defendant's untainted assets, but that burden is not dissimilar

---

[6] We acknowledge that plaintiff has raised several other arguments on appeal that are claimed to support the attachment sought. The interlocutory order we review here addressed the sole question of whether Luis applied. Thus, we do not address plaintiff's other arguments.

to other legal impediments to pretrial attachments, and flow from the weight afforded defendant's fundamental constitutional right.

¶ 25. Luis does not establish binding precedent with respect to this case for two reasons. First, Luis was resolved with a plurality opinion on behalf of four Justices and a concurring opinion on behalf of one. Ordinarily, we determine the binding precedential effect of such a decision by following the narrowest holding among the plurality opinions. State v. Atlantic Richfield Co., 2016 VT 22, ¶ 20, __ Vt. __, 142 A.3d 215. In this case, the rationales on which the opinions were based are distinct but overlapping; the only clear commonality is the actual holding that the government could not rely on 18 U.S.C. § 1345 to freeze a defendant's untainted assets preconviction to secure potential penalties and restitution upon conviction. That is not the precise issue in this case. Second, the fact that the government, rather than a private civil litigant, sought to freeze the defendant's assets in the context of a criminal prosecution distinguishes Luis from this case enough that even if the plurality opinion had enjoyed the support of a full majority, it would not unequivocally compel a decision in defendant's favor in this context.

¶ 26. Nevertheless, the plurality's language and reasoning in Luis provide persuasive support for defendant's argument that the attachment below violates her Sixth Amendment rights. The plurality did not frame the central question in the case as turning on the government's unique status or on the historical pedigree of the statute pursuant to which the government sought to freeze defendant's assets; rather, it stated, "[t]he question presented is '[w]hether the pretrial restraint of a criminal defendant's legitimate, untainted assets (those not traceable to a criminal offense) needed to retain counsel of choice violates the Fifth and Sixth Amendments.' " Luis, __ U.S. at __, 136 S. Ct. at 1088 (plurality opinion). The issue in that case, as defined by the plurality, is on all fours with the issue in this case.

12

¶ 27.    More important than the plurality's word choice in defining the issue before it is the plurality's rationale in deciding that case.  Almost every step in the <u>Luis</u> plurality's analysis applies with equal force to the circumstances of this case.

¶ 28.    Writing for the <u>Luis</u> plurality, Justice Breyer started by explaining that the Sixth Amendment right to counsel includes a defendant's "right to be represented by an otherwise qualified attorney whom that defendant can afford to hire." <u>Id</u>. at __, 136 S. Ct. at 1089.  Justice Thomas, in his separate opinion leading to the same conclusion as the plurality, went further, emphasizing that the original understanding of the Sixth Amendment right to counsel in 1791 was that it protected <u>only</u> a defendant's right to retain an attorney the defendant could afford. <u>Id</u>. at __, 136 S. Ct. at 1098-99 (Thomas, J., concurring).  Defendant in this case likewise relies on her Sixth Amendment right to hire an attorney of her choice whom she can afford to hire.  Nothing about this case calls for a different analysis of the scope or significance of the Sixth Amendment right.

¶ 29.    Next, the plurality described the critical distinction between a pretrial freeze of <u>tainted</u> assets, which are subject to pretrial statutory forfeiture even if the forfeiture undermines a criminal defendant's right to hire counsel of the defendant's choosing, and <u>untainted</u> assets, which required further analysis. <u>Id</u>. at __, 136 S. Ct. at 1090 (plurality opinion).  The plurality explained that as a matter of property law, a defendant's ownership interest in tainted assets is imperfect.  It noted, "[t]he robber's loot belongs to the victim, not to the defendant." <u>Id</u>. at __, 136 S. Ct. at 1090.  The statute the Court had applied in prior decisions in which it authorized pretrial restraint of a defendant's tainted assets provided that title to assets traceable to the crime passed to the government at the time the crime was committed. <u>Id</u>. at __, 136 S. Ct. at 1090-91 (citing <u>Caplin & Drysdale v. United States</u>, 491 U.S. 617 (1989) and <u>United States v. Monsanto</u>, 491 U.S. 600 (1989)).  Because the tainted property at issue therefore belonged to the government by law, no constitutional principle gave the defendant a right to keep the property to pay counsel. <u>Id</u>. at __, 136 S. Ct. at 1090.  But where untainted assets are involved, the plurality said that the government

13

is essentially in the position of an unsecured creditor with respect to these assets: it "someday might collect from a debtor's general assets," but is without "any present claim to, or interest in, the debtor's property." Id. at __, 136 S. Ct. at 1092. For these reasons, the plurality concluded that the Court's precedent involving seizure of tainted assets did not authorize pretrial seizure of untainted assets necessary to hire counsel of the defendant's choice. Id. at __, 136 S. Ct. at 1091-92.

¶ 30. The assets at issue here are undisputedly "untainted." They are not the fruits of defendant's alleged crimes; nor was she alleged to have used them in the commission of the crime. As with the untainted assets at issue in Luis, there is no principle of common law or statute that provides that, by operation of law, title to the untainted assets belongs to someone else. Plaintiff is not simply analogous to an unsecured creditor (or potential unsecured creditor) seeking to impose restrictions on untainted property to secure a possible future judgment; she is a potential unsecured creditor seeking just that. The second step in the Luis plurality's analysis applies with the same force here: the assets in question here are untainted, so the U.S. Supreme Court's prior decisions authorizing restraints on tainted assets provide no support for plaintiff's claims here.

¶ 31. The plurality accordingly focused its analysis on the conflict between the government's statutory authority to restrain innocent "property of equivalent value" to that of tainted property and the defendant's Sixth Amendment rights by comparing the government to a civil claimant in similar circumstances. Id. at __, 136 S. Ct. at 1093. It listed contexts in which the law of property allows a person "without a present interest in a piece of property" to impose restrictions upon a current owner to protect some future legal interest. Id. at __, 136 S. Ct. at 1093 (listing person holding reversionary interest in property seeking to prevent waste, contingent beneficiary of trust seeking to prevent trustee from dissipating trust assets, and holder of contingent, future executory interest in property seeking to enjoin activities of current owner.). The plurality described the government as seeking an analogous order that would "preserve Luis'

14

untainted assets so that they will be available to cover the costs of forfeiture and restitution if she is convicted, and if the court later determines that her tainted assets are insufficient or otherwise unavailable." Id. at __, 136 S. Ct. at 1093. This is exactly the interest plaintiff in this case seeks to protect through her attachment. Nothing about the plurality's general description of the government's interests focused on factors unique to its status as the government. The plurality's comparison of the government's general interests to that of private civil claimants of various sorts undermines the suggestion that the government's interest in Luis was of a different character or quality than the interests of a private civil claimant like plaintiff in this case.

¶ 32.    The plurality offered three considerations in support of its conclusion that the Sixth Amendment prohibits the court order that the government sought pursuant to its statutory authority. First, the plurality balanced the interests at stake and concluded that the defendant's Sixth Amendment right outweighed the government's interest in freezing assets to cover potential future penalties or restitution orders. Id. at __, 136 S. Ct. at 1093. It emphasized that the Sixth Amendment right to assistance of counsel is "a fundamental constituent of due process law," and that the order sought by the government "would seriously undermine that constitutional right." Id. at __, 136 S. Ct. at 1093. On the other side of the balance, the plurality recognized that the government had a contingent interest in securing its punishment of choice (namely, criminal forfeiture), and the victims had an interest in securing restitution from funds belonging to the defendant. Id. at __, 136 S. Ct. at 1093. The plurality described these interests as important, but concluded that compared to the right to counsel of choice, "they lay somewhat further from the heart of a fair, effective criminal justice system." Id. at __, 136 S. Ct. at 1093.

¶ 33.    The balance in this case is similar. If anything, plaintiff's interests are weaker than the government's in Luis. In that case, the government had dual interests: it sought to secure future penalties and secure restitution for the victims from the defendant's funds. In this case, plaintiff's interest is nearly identical to the latter of the government's dual interests. Plaintiff seeks to secure

15

a potential future judgment to compensate the Estate for injuries it suffered at defendant's hands. Like the government's interest in securing a potential future restitution order for the victim, plaintiff's interest in securing a potential future judgment is substantial; but it is still outweighed by the constitutionally grounded right to counsel of choice.

¶ 34.    The majority's approach here would give a credit card company seeking to collect a past due obligation the ability to freeze funds in a lawyer's trust account to secure a potential judgment, while frustrating a criminal defendant's Sixth Amendment right to counsel. How would a lawyer ever know whether a criminal defendant client's retainer would remain available to pay for the lawyer's representation?  By eschewing a balancing test altogether, the majority avoids grappling with the severe consequences of its position with respect to a fundamental constitutional commitment.

¶ 35.    The plurality's second consideration was the absence of any legal tradition supporting the preconviction seizure of innocent property with no connection to the charged crime. Id. at __, 136 S. Ct. at 1093-94.  Justice Thomas's concurrence relied more heavily on this rationale.  Id. at __, 136 S. Ct. at 1099-1103 (Thomas, J., concurring).  This factor focuses specifically on the historical limitations of the government's forfeiture remedy, and is not readily transferrable to the case before us.  It is the one factor that supports distinguishing the present case from Luis, and is the consideration that drives the majority's opinion.

¶ 36.    The plurality's final consideration was that allowing a restraint of the untainted property the defendant needed to pay for counsel "could well erode the right to counsel to a considerably greater extent than we have so far indicated." Id. at __, 136 S. Ct. at 1094 (plurality opinion).  The plurality asked, "[h]ow are defendants whose innocent assets are frozen . . . supposed to pay for a lawyer—particularly if they lack 'tainted assets' because they are innocent, a class of defendants whom the right to counsel certainly seeks to protect?" Id. at __, 136 S. Ct. at 1094.  Moreover, it noted that a rule that drives more criminal defendants into the public

16

defender system imposes greater burdens on government-paid lawyers. The force of this consideration does not depend in any measure on whether the party seeking to freeze untainted assets is the government or a civil litigant. A rule that made funds needed by a criminal defendant to pay for counsel subject to attachment in a civil court would pose no less of a threat, and have no different consequences with respect to this concern than the rule rejected by a majority of the U.S. Supreme Court in Luis.

¶ 37. In sum, the lion's share of the plurality's analysis in Luis is persuasive, and fully applicable in this case. Although one of the plurality's considerations does not apply in this case, the plurality opinion does not rest on that consideration, and the rest of its analysis reinforces that the government in that case was in the same position as a private litigant seeking security for a possible future judgment.

¶ 38. It's true that this ruling may limit the ability of crime victims, or any other potential civil creditor with claims against a criminal defendant, to secure potential civil judgments in their favor from the untainted assets of the defendant. Parties seeking to attach untainted assets in civil court face numerous obstacles to their ability to secure potential future judgments. They cannot attach a debtor's homestead up to a limit of $125,000 in value, 27 V.S.A. § 101; a debtor's interest in a motor vehicle up to $2500, 12 V.S.A. § 2740(1); or a debtor's professional or trade books or tools up to $5000 in value, 12 V.S.A. § 2740(2). Insurance payments of various sorts, 8 V.S.A. §§ 3706-3709, unemployment compensation benefits, 21 V.S.A. § 1367, and veteran's benefits, 38 U.S.C. § 5301, are all exempt from trustee process or attachment.[7] Like the statutory

---

[7] In addition to the statutory exemptions, many decisions hold that the rules of discovery preclude a plaintiff from inquiring into a defendant's financial circumstances unless the plaintiff has alleged a viable claim for punitive damages. This is because "[e]vidence of wealth is irrelevant and prejudicial in most instances." Campen v. Stone, 635 P.2d 1121, 1128 (Wyo. 1981); see also Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc., 130 F.R.D. 149, 151 (D. Kan. 1990); Christy v. Ashkin, 972 F. Supp. 253, 253 (D. Vt. 1997); Manns v. Briell, 811 N.E.2d 349, 355 (Ill. App. Ct. 2004); Sawyer v. Boufford, 312 A.2d 693, 694 (N.H. 1973).

17

exemptions, defendant's Sixth Amendment rights operate in effect as an additional exemption; defendant's funds, whether held in her own bank account or deposited in her lawyer's trust account, are exempt from attachment to the extent they are necessary to pay for legal fees by the lawyer of her choice. Civil litigants seeking security for potential future judgments may be burdened by this exemption, like all the others. But the weight of defendant's constitutional claim is no less strong than these statutory exemptions.

¶ 39. For these reasons, I would reverse the trial court. I would treat funds reasonably necessary for defendant's criminal defense by a lawyer of her choice whom she can afford to pay as exempt from the court's attachment, and would authorize attachment of those funds only to the extent that they are not reasonably necessary to her criminal defense.

¶ 40. I am authorized to state that Justice Eaton joins this dissent.


_____
Associate Justice


18